JOHN M. GRAHAM AND ANOTHER V. JAMES STEPHEN.

Where the defendant, at the conclusion of his answer, propounded interrogatories
to the plaintiff, and the plaintiff filed, under oath, what he denominated a rep-
lication and answer to the defendant's answer and interrogatories, and the de-
fendant moved to strike out parts of " the answer of the plaintiff to the interrog-
atories of the defendant," which motion was overruled, this Court said, that the
matters of defence, set up by the answer, rendered a replication proper ; that it
was, perhaps, irregular thus to make the same paper subserve the double pur-
pose of pleading and an answer to interrogatories, but that it was not excepted
to on that ground.

See this case at to the construction of the Statute (Hart. Dig. Art. 737,) which
permits a party in answer to interrogatories, to state such other facts tending to
his defence, as are closely connected with the fact on which he has been inter-
rogated.

See this case as to a contract for the exchange of lands, and as to an action for the
specifie performance of such contract.

Appeal from Milam.　Suit by James Stephen against John
Graham, April 20th, 1848, for the specific performance of Gra-
ham's bond to Stephen, dated January 2nd, 1841, for the con-
veyance of one-half of Graham's headright league, " so soon as
" the said James Stephen makes or causes to be made unto me
" a title to a tract of land conveyed to me by a bond, bearing
" even date herewith ; and warrants and defends the same
" from the claim or claims of all the world."　The bond from
Graham to Stephen stipulated that the league should be di-
vided fronting on the river (the Brazos) viz : running from the
river back to the back end of the league, and that Stephen
should have six months to make choice of halves.　The peti-
tion alleged that the plaintiff had selected the upper half.
The petition had also alleged that Graham had taken posses-
sion of the land given in exchange, and had received a convey-
ance thereof from the plaintiff.　Fall Term, 1848, Graham an-
swered by a general denial, and a plea in the nature of accord

and satisfaction. Fall Term, 1849, John Taylor petitioned the Court for leave to intervene, claiming by purchase from Graham, dated April 23rd, 1849. The leave was granted, and Taylor filed a general denial, and special plea that the bond sued on was, by agreement between Graham and Stephen, before the institution of this suit, cancelled and annulled, and that he, Taylor, had purchased the land as aforesaid. Stephen replied by alleging that the purchase of Taylor was void, for champerty.

Defendant filed an amended answer, in which he alleged that Stephen failed to make his selection within the time prescribed, and that afterwards, on the 24th May, 1842, Graham executed and tendered to said Stephen a deed for the lower half of said league ; that Stephen refused to receive it. For further answer defendants alleged that Stephen had refused "to convey or secure" to said Graham a title to the land to be given in exchange, but in fraud of Graham and in violation of the said agreement, sold and conveyed the same to Lorenzo Sterling, by deed dated January 24th, 1843, filed and recorded in Washington county, January 25, 1843, which deed never had been revoked or annulled, wherefore said Stephen became unable to complete his contract with said Graham, and any subsequent deed to said Graham was fraudulent and void. And said defendants further aver that after said Stephen had so conveyed and sold said six hundred and thirty-four acres of land, and rejected the deed tendered to him by said John M. Graham, for said half league of land, the said James Stephen and John M. Graham came to a full and final adjustment of all disputes, demands and controversies between them, and therefore, long previous to the institution of this suit, they mutually and upon adequate consideration agreed that the bond, sued upon in this case, should be annulled and destroyed, and upon that basis all their disputes were finally settled ; that said bond was casually or carelessly left in the hands of said Stephen, who wrongfully retained and preserved it, assuring said

Graham that in pursuance of said agreement of settlement he had destroyed it. Defendants then alleged that the said Stephen, on the 2nd of June, 1843, caused a letter to be written to the said Graham, from which many of the facts alleged by defendant would appear. Not knowing any other manner of proving the letter, defendants put to the plaintiff, Stephen, two interrogatories, whether he had not caused the letter (which was annexed) to be written and sent to Graham, with his name signed to it, and who had written it. The letter read as follows:

CANEY CREEK, Washington County, June 2nd, 1843.

DEAR SIR—After my best respects to you relative to the matter in controversy between us must be settled, if you wish peace, without law or difficulty, you can have it; either mutual, between ourselves, or by arbitration. It is my wish to close the matter, and it must be done. I do not wish to be understood as touching the land or sale, as I have sold it to Mr. Sterling, it being my legal right to do so; but as I am bound to place the purchaser in peaceable possession, I think the motion to compromise to be the first and most prudent step, as I wish to avoid litigation; and if you will meet me on Monday next, at any place convenient, we will try to arrange the whole business, and be done with it. You know what I offered you once; in place of giving it to an attorney, I will still do as I said, in like property. This is, the second crop, and the peaceable use of my place two years, which you can reap in peace, on the principles of compromise; and if you feel disposed to settle as aforesaid, you will let me know by the bearer. If convenient you can meet me at Mr. Hoath's, or any other convenient place.

Yours respectfully.

JAS. STEPHEN.

Fall Term, 1851. And now at this Term, comes the said plaintiff, and for answer and replication to the defendant's amended answer and interrogatories, saith, &c., admitted the agreement

to exchange lands as alleged; alleged that Graham took posses-
sion of the land given in exchange by plaintiff, and sold the
same, his vendees being now in possession thereof; that plaintiff,
having heard that the land to be conveyed to him by Graham
conflicted with an eleven league grant, at various times offered
to rescind the contract, which Graham peremptorily refused;
that plaintiff at that time believing that Gaaham could make
no good title to plaintiff for the land agreed to be conveyed
to him, executed a deed to Lorenzo D. Sterling for the land
which he had agreed to convey to Graham, and caused the
same to be recorded, but that it was done solely to prevent
Graham from selling to an innocent purchaser, and thereby de-
frauding the plaintiff; that Sterling knew of the dispute be-
tween the parties, paid nothing for the land, never claimed it
as his own, but acted merely as the friend of the plaintiff.
Admitted that the letter referred to in defendant's answer and
interrogatories was written by his instruction, and believed
Maddox wrote it, and that it was sent to said Graham by Da-
vid Linden, with an offer to rescind the whole contract, and
that he then offered to give to said Graham the use of the farm
in Washington county, which he had about two years, free of
rent, and to pay him one hundred dollars in good property, if
he, the said Graham, would release the plaintiff from his bond
aforesaid, and restore the possession of the land he had ac-
quired, and receive back the land mentioned in this suit.
Plaintiff further states that the said Graham refused to accede
to this or any other offer of compromise, except that each
should make to the other a title, as in their original contract
they had agreed; and plaintiff, in pursuance of said agreement
did execute what he then believed and now believes and
charges was a good and valid title to the said, &c., and de-
posited the same with Col. Thomas B. White, with directions
to deliver the same to the said Graham, as soon as said Gra-
ham should execute to him a deed in pursuance of his contract
in the bond in this suit set out.   Plaintiff is informed and be-

lieves that said Graham falsely told said White that he had executed his deed as aforesaid, and by that means deceived and imposed on said White and got possession of the said deed; that plaintiff afterwards acknowledged said deed for record, and that the same, as he is advised and believes, is now on record, &c.; and that said Graham accepted the same long after he had received the letter in the answer mentioned; that both Graham and Sterling knew, &c.; that Sterling never claimed the land, &c.; and that Graham took good title, &c. Denied that the bond had ever been annulled, or satisfied, or that he had ever received anything for his land, except said bond. Sworn to.

Same Term, defendants moved "to strike out that part of "the answer of the plaintiff to the interrogatories of the de-"fendants, which was not responsive to said interrogatories, "nor closely connected with the facts referred to," to wit: all of said answers except the following: (here the answers were copied from the admission of the writing of the letter, down to the allegation that Graham refused to accede to Stephens' offer of compromise, or any other, inclusive.) Spring Term, 1852, motion overruled.

There was also an exception to the introduction of such portions of the answers, in evidence.

All the affirmative allegations on both sides were well sustained by the evidence, but the fact that Graham had accepted a deed from Stephens and sold the land, was not rebutted. There was proof that Graham had removed from Washington county before the institution of this suit, and settled on the lower half of his league. It was proved by plaintiff that soon after the original contract, he started up the Brazos to make his selection, but was informed by the way that Graham's league was covered by an older eleven league grant, whereupon he returned and sought a cancellation of the contract of exchange.

The plaintiff had a verdict and judgment for the upper half of the league.

*J. Taylor*, for appellant.

*A. M. Lewis*, for appellee.

WHEELER, J. The questions presented by the record, which are deemed to require notice, are, 1st. Whether there was error in the refusal of the Court to strike out the part of the plaintiff's replication and answer to the defendant's amended answer and interrogatories, indicated in the motion of the defendant; 2nd. Whether, upon the facts of the case, the plaintiff was entitled to the relief sought.

The defendant, in his amended answer, had set up new matters of defence; and, in support of them, made reference to a letter, alleged to have been written by the defendant, stated a part of its contents, made it the basis of a charge of fraud, drew from it certain conclusions adverse to the plaintiff's case, and annexed to his answer interrogatories to the plaintiff touching the authenticity of the letter. The matters of defence, set up by the answer, rendered a replication on the part of the plaintiff proper; and, instead of filing a replication to the new matter, and then making a separate answer to the interrogatories, the plaintiff replied to the new matter by an answer, under oath, to the new matter pleaded, and to the interrogatories; thus making his answer subserve the double purpose of pleading and an answer to interrogatories. This, perhaps, was irregular; but the answer was not excepted to on that account. But the defendant filed a motion, in which he indicated a part of the replication and answer of the plaintiff to the interrogatories, which he proposed to retain, and to detach and strike out the rest; retaining, not merely so much as was a direct response to his interrogatories, but all which contained statements and admissions which he deemed would sub-

serve his purpose, and rejecting all which was explanatory of those statements and admissions, or adverse to him. The Court, we think, very properly refused the motion. To have sustained it, in the terms in which it was proposed, would have had the effect to mutilate the answer and prevent its sense and meaning. This the Court could not permit. It could not sanction the use of interrogatories for such a purpose. The law does not permit its forms to be made the instrument of injustice. Nor was it the duty of the Court, upon this motion, to inspect the answer, to see if there was any part of it, not specially and distinctly designated in the motion, which was obnoxious to just objection, with a view to strike out such part. The Court is never bound to do more than to respond to the question proposed in the very terms in which it is propounded.

But if the defendant had moved to strike out all the plaintiff's answer, which was not in direct response to his interrogatories, still, we think, his motion may well have been refused. The letter was necessarily connected with the controversy between the parties. It was one circumstance in the history of that controversy. It was the right of the plaintiff, when interrogated as to the writing of the letter, to state the circumstances which led to and were connected with the writing of it. To do this intelligibly, so as to show its true interpretation and bearing, he was under the necessity of giving a history of the entire controversy to which it related. Just such a case we may suppose to have been in the mind of the Legislature when, after requiring the party interrogated to " simply confess or deny the fact," they extended the right of reply beyond a catagorical answer, by declaring, " but the party may " state such other facts tending to his defence, as are closely " connected with the fact on which he has been interrogated." (Hart. Dig. Art. 737.) Under a similar provision in the Code of Practice of Louisiana, where one of the plaintiffs, who was called upon to acknowledge or deny his ancestor's signature to a deed and agreement, admitted it, but added that these docu-

ments were signed while his ancestor was in duress, and through the threats and menaces of another, the Court refused to strike out that part of the answer which related to the duress, and the Supreme Court held the ruling right, and said, "He who is called upon to answer whether a particular act "was done, may declare such circumstances as effect its essence "or validity." (11 Martin, 217.) And in Nicholas v. Price, (6 N. S. 705,) where there appears to have been quite as good reason as in the present case, to object to the answer as irrelevant, in reply to the objection that the answer contained matter wholly irrelevant to the question put, the Court said, "The "Judge did not err in permitting it to be read in evidence. "The Code of Practice permits the party interrogated to state "other facts than those contained in the interrogatory, pro- "vided they be closely linked to the facts on which he has "been questioned. In this instance the connection is manifest "between the agreement asked about, and the nature of that "agreement; the cause which led to it, and the facts which "produced its dissolution."

In the present case there had been a protracted controversy and a series of efforts to compromise. Several letters had been written with that view, of which this was one. From some expressions used, one conclusion sought to be drawn was, that there had been a rescision of the contract on which the suit was brought. To show that no such rescision had taken place, and that such was not the meaning of the expressions used in the letter, the plaintiff stated the occasion of writing the letter, gave a history of the entire controversy to which it related, and stated the fact of the defendant's continued possession and enjoyment of the consideration he had received of the plaintiff for entering into the contract. There is no part of the answer which is not more or less intimately connected with the letter. But if the connection of all its parts were not apparent, still the Court did not err in refusing the motion, for the reason before stated.

Our opinion upon the ruling of the Court upon the motion to strike out, disposes also of the objection to the admissibility of the answer in evidence.

Upon the remaining question, whether, upon the facts of the case, the plaintiff was entitled to recover, we see no cause to hesitate. That the parties contracted to exchange lands; that they thereupon executed, each to the other, his bond for title; that the defendant went into the possession of the bond of the plaintiff; that he afterwards received a conveyance from the plaintiff, and sold the land, and that he, and his vendees have continued in the undisturbed possession, and have an indisputed and indisputable title; and that the defendant has not conveyed to the plaintiff the land contracted to be conveyed by him; that he has refused and still refuses to do so, and persists, by every means in his power, in resisting the plaintiff's right; are facts indisputably established by the record. And it would seem that they are amply sufficient to entitle the plaintiff to have a conveyance decreed him.

But it is insisted that the plaintiff cannot now have a specific performance of the contract, because, when making an ineffectual attempt himself to obtain a rescision of it, he made a voluntary conveyance of the land to one Sterling. It is proved, however, indisputably, that Sterling had full knowledge of the defendant's right; that he never made any claim or pretention of right under his conveyance; that it was without consideration; that if he ever could have asserted title under it, his right has long since been barred by limitation; and, in a word, that this conveyance is and was from the beginning utterly worthless, and was so regarded. It is true that, after making the contract, the plaintiff became apprehensive, and, it would seem, not wholly without cause, that the defendant could not make him a good title; and that he thereupon refused, for a time, to perform his part of the contract, declining either to make a conveyance or to accept one from the defendant; and sought anxiously to be released from his bargain, and to ob-

tain a recision of the contract. But ultimately failing in this, he performed his part of the contract, by making a conveyance which the defendant accepted without objection.

It may be true that the plaintiff is justly chargeable with having acted with folly. But surely no act of folly with which he may be chargeable, nor his refusal to accept a conveyance at that time, could release the defendant from the obligation of his contract, or from the duty to make a conveyance when afterwards required, after he had accepted of the plaintiff's conveyance. His having tendered a deed at one time, which was refused, did not release him from the obligation to deliver it when afterwards requested. While holding the plaintiff to the performance of his contract, the defendant was bound, at all times, to be ready to perform on his part.

It was objected to the plaintiff's conveyance, that it was a quit claim deed, and not such an one as by his contract he was bound to make. But the answer to this is, that it was accepted by the plaintiff without objection, and has answered all the purposes contemplated by the contract. If it were such, (which, however, does not appear by the record, otherwise than by the statement of a witness, who might easily be mistaken, after so great a lapse of time, and that the deed is not copied into the record is not the fault of the appellee, and should not operate to his prejudice,) it is quite too late, now, for the first time, to raise that objection.

Finally, it is objected that the plaintiff did not make his selection of the half league, of which he would have a conveyance, within the time limited by the contract. The utmost that the defendant can claim from this failure, was that the plaintiff had lost his privilege of making the selection, and that he should himself select which half he would retain for himself. This he did, settling upon and improving the part he chose to reserve for himself, and leaving the plaintiff no option, but to take that part which remained unoccupied. Nor indeed does the defendant, now, nor has he, since he accepted the plaintiff's

conveyance, expressed a willingness that the plaintiff should receive any other portion of the land, or that any other or different partition of it should be made. After having made his own selection, and left the plaintiff no option, his objection that the plaintiff did not make the selection, cannot avail him.

There are other objections urged to the judgment, but they are not deemed of a character to require notice. We are of opinion that there is no error in the judgment and it is affirmed.

Judgment affirmed.