## A. J. WARD & CO. V. BLEDSOE & CLARKSON.

1—This court, in the present case, takes occasion to deplore the want in our courts of an officer similar to a commissioner in chancery, to audit and adjust complicated mutual accounts between litigants, and report results to the court.

2—It has been the constant and unvarying practice of this court never to disturb the verdict of a jury, if at the trial any evidence was adduced on which it could have been found.

3—It is only in cases where the verdict appears, at first blush, to be palpably wrong, oppressive, unjust, and subversive of legal right, that a court is justified in setting it aside, unless there has been misdirection of the jury by the court.

4—Under our system all suits may be maintained or defended on the principles both of law and equity ; and, in consequence, much greater latitude is given to our courts in their instructions to juries than is tolerated under a common law system.

5—Factors, being special owners of property consigned to them, when the transit is complete, may make a valid sale of the property to third parties; and, if not specially instructed by their principals as to time or terms of sale, they are not liable to imputation of bad faith for selling it at the lowest ebb of the market, unless they purposely ignored intelligence of a probable rise in prices.

APPEAL from Falls. Tried below before the Hon. A. J. Evans.

Ward & Co., the appellants, sued Bledsoe & Clarkson, the appellees, who were a mercantile firm of Falls county, on an alleged indebtedness of $2934, balance due on account.

The defendants pleaded in reconvention, and the jury returned a verdict in their favor for $1972 50.

There is a large mass of evidence in the record, but, in view of the grounds taken in the opinion of this court, there seems to be no object in stating the facts minutely.

The plaintiffs' motion for a new trial being overruled, they appealed.

*Flint, Chamberlin & Graham*, for the appellants.

*Herring & Anderson*, for the appellees.

LINDSAY, J.—This action was brought by the appellants upon an account current, to which a plea in reconvention was interposed by the appellees, alleging that they had consigned a large amount of cotton to the appellants, as their factors and agents in Galveston, to put in market to sell, and to make them due returns of sales; that the cotton was received by their factors, or commission merchants, and sold; and that the proceeds were greatly in excess of any just demands which the appellants held against them; but that they had exhibited false and fraudulent accounts of sales, by which the apparent balance against them in the account current was created.

Upon the trial the jury found a verdict in favor of the plea in reconvention, and assessed damages against the appellants. Their motion for a new trial being overruled by the court, they gave notice of appeal.

The record is quite voluminous, and the facts are of such a character as would awaken in the mind of every enlightened jurist, who might be compelled, from a sense of duty, to probe and sift them, a feeling of regret, that no such officer as a commissioner in chancery is provided by law to audit and adjust such mutual claims, and to present the results by report, in condensed form, so that the legal rights of the parties might be the more easily, the more readily, the more justly, and the more satisfactorily determined. Cases are frequently occurring, which make manifest such a want. No rational mind can doubt that such an officer would be much better fitted and qualified to investigate such matters, and to arrive at just conclusions, than juries in the hurried dispatch of public trials. It is almost impossible so to conduct such investigations before a jury as to render the final results in complete harmony with perfect justice. This defect is to be deplored as one of the infirmities of judicial administration under our system.

Still, the doctrine has been uniformly maintained by an almost unbroken series of opinions, that the task of interfering with the verdicts of juries is a delicate one, under a system which so jealously arrogates the right of a jury to be the exclusive judge of the weight of evidence in all cases submitted for its deliberation. It has been the constant and unvarying practice of this court, and of all courts, where the trial by jury is an adjunct of the judicial system, never to disturb a verdict if any testimony was adduced upon the trial upon which a jury might base its finding. This practice is founded upon the rule that the jury is the exclusive judge of the facts of the case—or, in other words, of the weight of the evidence. It is only in cases where the verdict appears, *at the first blush*, to be so palpably wrong, oppressive, unjust, and subversive of legal right, that a court can vindicate its action in depriving a party of this imprescriptible, inviolable and constitutional right of trial by jury, when the amount in controversy exceeds ten dollars. If a court could always interfere and set aside a verdict, upon its own judgment that it

was not sustained by the weight of evidence, the trial by jury would be a mere bagatelle, and a useless appendage of the court.

There are three assignments of error in this case: the verdict not sustained by the evidence; the verdict oppressive and unjust, and the charge of the court contrary to law.

In relation to the first assignment, the court conceives there *is* evidence in the cause upon which the jury might have based its verdict; and as the court is not disposed, by a departure from both law and precedent, to invade the province of the jury, for the reasons already given, it can not regard that assignment as tenable. Nor does it consider the second assignment as well taken; since the verdict does not appear so palpably wrong as to shock the sense of justice of the common interpreter of human motives, and the ordinary observer of the transaction of human affairs. Unless, then, some error of law can be found in the charge given to the jury, this court would not be justified in disturbing the verdict.

Whilst in no common law actions does any case on trial assume any equitable phase, except the solitary one of *assumpsit*, which is founded on contracts like the one under consideration, yet, under our system, all cases may be enforced or defended, both upon the principles of law and upon the principles of equity; which give a much greater latitude to the courts in their charges and instructions to juries, than is tolerated in a purely common law system. In cases of this nature, equity does avail in both systems. In the jurisprudence of Texas, it is required to be made available in all.

No specific error in the charge of the court is pointed out. This court is therefore left to look to the general object and tenor of the charge without criticism upon any particular portion of it. After a very full recital of the terms of the complaint and the grounds of the defense—the substantial averments of the petition and answer—the issue between the parties—the court charged the jury, if they believed from the evidence there was a balance due the plaintiffs, they should so find. But, it was further charged, in effect, if the proof satis-

fied them that the defendants had sent to them an amount of cotton which, at its market value, if honestly sold and accounted for, was more than sufficient to extinguish that balance, the jury should find for the defendants, on their plea in reconvention, the residue of the proceeds of the sale of cotton after payment of that balance, according to its market value at such time as they might believe from the evidence the cotton was sold by the plaintiffs, as their commission merchants or factors. This is the general scope of the charge. In all this the court can discover nothing illegal, nothing inequitable. The utmost good faith ought to be observed between factors and their principals. When business is committed to such agents, the preservation of good faith is only to be maintained by the promptitude of returns upon the completion of the service, and by the fullness and explicitness of statement, as to the results of the factorage transactions entrusted to them.

There can be no question, as a matter of law, that the factors, being the special owners of the property consigned to them when the transit is complete and ended, may make a valid sale of it to third parties. And, unless they have special instructions from their principals as to the time and terms of sale, they would not be liable to the imputation of bad faith towards their principals for selling it at the lowest ebb in the market, unless they purposely ignored all intelligence of a probable advance in prices. But it was a question before the jury at what stage of the market was the cotton actually sold. This question involved, under the allegation of fraud in the plea, the important consideration of the actual price obtained, and left to the jury the determination of the correctness or falsity of the returns made. The jury alone was the judge of that matter, from the evidence before them; and, however weak that evidence may be conceived to be, it is not the province of this court to divest the jurors of their right of judgment upon the facts. Perceiving no error, therefore, in the charge of the court, the judgment is affirmed.

                                                    Affirmed.