PECOS & NORTHERN TEXAS RY. CO. et al. v. GRAY et al.

(Court of Civil Appeals of Texas. Amarillo. Feb. 10, 1912. Rehearing Denied March 15, 1912.)

1. APPEAL AND ERROR (§ 731*)—ASSIGNMENT OF ERROR—SUFFICIENCY.

An assignment of error, that a verdict is not supported by competent evidence and is ex-

---

cessive, is too general, since it combines two distinct alleged errors.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3017–3021; Dec. Dig. § 731.*]

2. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—SUFFICIENCY.

A proposition in support of an assignment of error, that there is no competent testimony to support a verdict, does not raise the question of the insufficiency of the evidence, but merely whether there is any evidence to support the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

3. CARRIERS (§ 228*)—ACTION BY SHIPPER—EVIDENCE—SUFFICIENCY.

In an action against railroad companies for rough handling and delayed delivery of cattle shipped by plaintiff, evidence held to support a verdict for plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

4. APPEAL AND ERROR (§ 1001*) — VERDICT—CONCLUSIVENESS.

A verdict should not be disturbed on appeal, if supported by any evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922, 3928–3934; Dec. Dig. § 1001.*]

5. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—STATEMENT—SUFFICIENCY.

An assignment of error will not be considered, when the subjoined statement is only that the court charged erroneously, without showing that the error was not cured in other parts of the charge, or that appellants were prejudiced thereby.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

6. APPEAL AND ERROR (§ 699*) — RECORDS—SUFFICIENCY.

An alleged error in denying a requested instruction cannot be considered, where appellee contends that the instruction was given, and it cannot be determined from the record whether it was given or not.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2928–2930; Dec. Dig. § 699.*]

7. TRIAL (§ 260*) — NEGLIGENCE — ACTIONS — INSTRUCTION.

In an action by a shipper of cattle against a railroad company for negligence in handling the shipment, where the court charged that, in handling the train in which the cattle were transported, failure to exercise such care as ordinarily careful, cautious men would have exercised would constitute negligence, it was not error to refuse a requested instruction defining negligence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

8. WITNESSES (§ 240*)—APPEAL AND ERROR (§ 971*)—LEADING QUESTIONS.

It is within the discretion of the trial court to permit leading questions, and, unless this discretion is abused, it does not constitute reversible error.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 795, 837–839, 841–845; Dec. Dig. § 240;* Appeal and Error, Cent. Dig. §§ 3852–3857; Dec. Dig. § 971.*]

9. EVIDENCE (§ 543*)—OPINIONS—VALUE OF PROPERTY.

In an action against a railway company for negligence in handling a shipment of cattle, a witness with 20 years' experience in handling and selling cattle and about 12 years' experience in the particular market where the cattle in question were sold, who saw the cattle involved, sold the same, and knew the condition of the market, may testify what they would have brought, if in good condition.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2356½–2358; Dec. Dig. § 543.*]

10. CARRIERS (§ 228*)—HYPOTHETICAL QUESTION—FACTS ASSUMED.

In an action against a railway company for negligence in handling a shipment of cattle, evidence held sufficient to show that the cattle were damaged and in bad condition when they reached their destination, and hence to justify the assumption of such facts in a hypothetical question concerning their value, if in good condition.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

11. DEPOSITIONS (§ 64*)—EXAMINATION—RESPONSIVENESS OF ANSWER.

In answer to an interrogatory in a deposition as to the effect on their salability of keeping cattle confined in cars longer than necessary, the witness stated that it caused extra shrinkage and damaged their appearance and selling value, and that this was especially true of calves, which could not stand as hard a trip and lost more than grown cattle. Held, that the answer was not objectionable as not responsive, since, although more full than necessary, all the matters embraced related to the matter inquired about.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 133–141; Dec. Dig. § 64.*]

12. CARRIERS (§ 228*)—DELAY IN TRANSPORTATION—EVIDENCE.

In an action against a railway company for delay in transporting a shipment of cattle, evidence of the time taken to transport a shipment to the same market, from a point near the shipping point in question, about three years before the shipment involved, is admissible; the difference in time and place of shipment affecting only its weight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

Appeal from Swisher County Court; W. F. Hendrix, Judge.

Action by T. A. Gray and another against the Pecos & Northern Texas Railway Company and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Madden, Trulove & Kimbrough, and F. M. Ryburn, for appellants. Martin & Zimmermann, for appellees.

PRESLER, J. This suit was instituted in the county court of Swisher county, Tex., by T. A. Gray and S. B. Dinwiddie, appellees, against the Pecos & Northern Texas Railway Company, the Southern Kansas Railway Company of Texas, and the Atchison, Topeka & Santa Fé Railway Company, appellants, to recover damages upon a shipment of 430 head of calves, shipped by appellees over appellants' lines of railway about October 18, 1909, from Tulia, Tex., to Kansas City, Mo., appellees (plaintiffs in the trial court) alleging rough handling and delays en route; that said cattle should have reached Kansas City for the morning market of October 20th, but that they did not in fact reach the market until about noon of October 21, 1909, and

that on account of their bad appearance they sold for 25 cents per cwt. less than they would have sold for, if in good condition, thereby damaging plaintiffs $292.75; that said calves lost 20 pounds per head in extra shrinkage, whereby plaintiffs were damaged in the sum of $408.58; that 5 of said calves were so badly crippled that they sold for only $2.50 per cwt., whereas they should have sold for $4.50 per cwt., to plaintiffs' damage in the sum of $31.28; that 2 calves were so badly bruised that they sold for only $5, whereas they should have sold for $25.92, to plaintiffs' damage in the sum of $20.92; that 2 calves were killed and totally lost, to plaintiffs' damage in the sum of $25.92. Plaintiffs alleged damages therefor aggregating $779.45.

Defendants answered to the merits by general denial and special plea, to the effect that said cattle were transported under and by virtue of a written contract, entered into between them and plaintiffs upon a valid consideration on October 18, 1909, whereby plaintiffs agreed to load, unload, and reload said cattle at the point of origin and at the feeding point en route, and to oversee and have charge of all persons engaged in such work, and that by reason thereof plaintiffs were not entitled to recover any damages occasioned by improper loading, unloading, and reloading, which they could have avoided by looking after and overseeing such work in person, and that the failure of plaintiffs to comply with said written contract in this respect was negligence upon their part and the proximate cause of any injuries which the cattle so received.

A trial was had before a jury, and a verdict and judgment rendered against all the defendants on January 19, 1911, for $665.24, from which judgment defendants duly appealed to this court and here assign error, and ask that said judgment be reversed and rendered for appellants, or the cause remanded for a new trial.

Appellants' first assignment is as follows: "The court erred in overruling defendants' motion for a new trial, 'for the reason that the verdict of the jury is not supported by any legally competent evidence, and is wholly exorbitant and excessive in that it appears that plaintiffs did not suffer any decline in market, that their cattle did not suffer any unusual delays en route, and reached the market for which they were intended, and that they did not suffer any damages on account of their cattle depreciating in the pens; the evidence clearly showing that their cattle topped the market, and sold for the highest price for which any cattle of their class and kind sold on that particular day."

[1, 2] Appellants' only proposition under this assignment is as follows: "The verdict of the jury is wholly excessive and exorbitant in that there is no legitimate testimony to support a recovery for $665.24, and said verdict is shown to have been arrived at through passion and prejudice." We are inclined to the opinion that appellants' objection to the consideration of this assignment, on the ground that it is too general is well taken, as the same appears to submit two separate and distinct propositions, to wit: (1) "That the verdict of the jury is not supported by any legally competent evidence;" (2) "that the verdict is wholly exorbitant and excessive." Insurance Co. v. Chowning, 86 Tex. 660, 26 S. W. 982, 24 L. R. A. 504. It also appears that the only proposition submitted under this assignment combines two distinct and separate propositions, the last of which to wit, "Said verdict is shown to have been arrived at through passion and prejudice," is not contained in the assignment; and, if these objections be waived and the assignment considered, it is evident that under the proposition submitted in support of the same the issue tendered is only that there is no legitimate testimony to support the verdict rendered, which is tantamount to stating that there is no evidence to support the verdict, and does not, we think raise the question of the insufficiency of the evidence. T. &. P. Ry. Co. v. Raney, 86 Tex. 363, 25 S. W. 11; T. &. P. Ry. Co. v. Corn, 110 S. W. 485–487.

[3] We are further of the opinion that the assignment is without merit, in that the evidence amply supports the verdict rendered; it appearing from the evidence that the distance to Kansas City from Tulia is 635 miles, and that appellees' cattle were loaded at Tulia on October 18, 1909, at 6:45 p. m., and were unloaded at Kansas City at 7:50 a. m. on October 21, 1909, consuming 61 hours in making the trip, and that there was an unreasonable delay of at least 24 hours; that appellee Gray testified, without contradiction, that in 1906 the trip was made from Amarillo to Kansas City in from 26 to 30 hours, and from Canyon City to Kansas City in from 32 to 33 hours, if they did not feed en route, and that the usual and customary run from Tulia is now from 40 to 50 hours; that the calves composing this shipment were held in the cars on the tracks at Wellington from a little after 8 o'clock until 12 or 1 o'clock that night before unloading; that they asked the yardmaster there to unload at once; that when the train stops the calves lay down; that the customary time for unloading is only a few minutes per car; that when they got to Wellington his ten cars of cattle were located about the middle of the train of 40 or 50 cars.

The witness T. J. Evans testified: "We got to Wellington a little before dark. I did not know what time they unloaded; but it was 2 o'clock when we got to the hotel. They had a time to set the cars. I helped push them and pull them to get them spotted. Somewhere up the road, after we left Wellington, there was a new piece of track, and we had a long train, and liked to never got up the grade. We had a lot of junk tied on behind."

Appellant's conductor, Lowery, testified that this was an extra stock train; that he made an average of only 13 miles an hour between Tulia and Amarillo; that they stopped 50 minutes at Canyon City on account of engine failure, which was not a customary stop; that he had 25 cars of cattle and one car of hogs in the train.

Appellants' witness Geer testified that he made 17.2 miles per hour between Amarillo and Waynoka; but his testimony shows he left Amarillo at 11:30 p. m., October 18th, and arrived at Waynoka at 12:30 p. m., October 19th, or 13 hours on the run, and that the distance is 209 miles, an average of only 16 miles per hour; that he had 28 cars of stock, having 3 cars more cattle than Lowery started with, and having set out the car of hogs.

Appellants' witness Grove testified that "it is 107 miles from Waynoka to Wellington; that there were 44 cars in his train," showing 16 cars more than Geer had, which 16 cars consisted of 8 cars of dead freight and 8 empties, tied onto an extra train of perishable live stock.

E. T. Brown, witness for appellants, testified that the distance from Emporia to Argentine is 109 miles; that he handled the stock between these points and made it in 9 hours and 20 minutes, making an average speed of from 12 to 14 miles per hour, or 11½ miles an hour average speed, and that the average speed over this division is 20 miles an hour; that he stopped, in addition to other stops, 40 minutes at Le Loup to let special 1461 by. At Holliday, stopped 1 hour and 15 minutes on account of wreck; that there were now 59 cars in this train loaded with cattle, showing that the 8 dead freight and 8 empties had been set out, and 31 cars more of cattle added.

Appellants' witness Paxton testified that it is about 4 miles from Argentine to Kansas City; that they coupled onto the cars at Argentine at 3:55 a. m. and delivered them at the stockyards at 7:10 a. m.; that the cattle were unloaded at 7:50 a. m., or 40 minutes after they reached the stockyards.

Appellants' witness Gaines testified that these cattle were delayed after they arrived at Wellington from 9:05 p. m. until 10:35 before they were carried to the stockyards, or 1 hour and 30 minutes before commencing to unload, and does not state when the unloading finished.

Gray and Evans both testified that it took until 1 or 2 o'clock that night before the cattle finished unloading. There were only 28 cars of stock to be unloaded at Wellington, and there were 59 cars which went into Kansas City, and it only took 40 minutes to unload the plaintiffs' cattle after they reached the stockyards.

The testimony also shows that these cattle were held in the cars on the tracks at Wellington from a little after 8 o'clock until 12 or 1 o'clock that night before unloading, and that they were switched around the yards, waiting to be unloaded.

The witness Gray testified that along the road some place he did not remember he was jerked down by the train bumping hard; that everybody in the car fell.

The witness Evans also testified that somewhere up the road after leaving Wellington there was a new piece of track; that they had a long train, and liked to have never got up the grade; that this piece of track was about a mile long, and that they were about an hour getting upgrade; that the train jerked hard all the time, and turned over chairs in the car; that they could tell when the jerk was coming by the rattling of the cars, and had to hold on to something to keep from being jerked down; that, where the cattle were not crowded, it would jerk them down, too. The evidence further shows that these cattle were fat and in good condition when delivered to the railway company at Tulia; that they were a good quality of Hereford calves, among the best in the Panhandle, and that these calves were in bad condition when they were unloaded at Kansas City; that none of them were dead at Kansas City, and that none died after reaching there, but that two of them were dead at Wellington, and that they had been trampled to death; that several could hardly be driven up the chutes; that they looked tough.

R. L. Tamblyn, witness for appellees, testified: "I first saw these cattle about 8 o'clock in the morning, when they were brought to the sale pens of the Tamblyn Commission Company. These cattle were in very bad condition when I saw them. Many of them were bruised. Five had, in fact, been so badly trampled and mashed that I had to sell them at $2.50 per hundred. Two of the calves were so badly crippled that they had to sell for $2.50 each, and there were a good many calves in the bunch of 423 that sold at $4.80. They were more or less bruised and mashed. There were two of the cattle very badly crippled, and several more maimed. A good many of them more or less bruised and 2 dead, which were worthless. That the account of sales shows the freight and feed at Wellington on these cattle were $432.67 or $72 per car."

The witness Gray testified that the keeping them on the cars had a bad effect on the calves, and that they would not sell for as much by reason of being so held on the cars; that they would not take a fill at all, if they were a long time on the road; that they would be tired and would lay down; that jarring made them sore, and they would not fill; that when they do not fill they do not look as well, and as much could not be got for them. The witness Tamblyn testified that if these cattle had arrived in good condition for the early market on October 21st they would, in his opinion, have brought

$5 per cwt., and that from his experience as a cattle salesman and in the cattle business he knew the effect it had on cattle to keep them confined in the cars for a period of, say, 24 hours overtime, when they had been on the cars for a period of, say, 36 to 48 hours; that it not only caused an excessive shrinkage, but damaged the appearance and selling value of the cattle as well, and that this was especially true of calves, which cannot stand as hard a trip to market as grown cattle; that they go to pieces faster and look worse than grown cattle handled in the same way; that he had been selling cattle for the Tamblyn Commission Company on that market since the company was organized 12 years before, and that he had had about 20 years' experience in selling cattle, and had been engaged in handling and selling cattle generally practically all his life, and that he sold the entire 430 head of cattle contained in this shipment on October 21, 1909; that if these cattle had been in good condition on their arrival at Kansas City they would have sold for 20 to 25 cents per cwt. more than they did sell for; that he sold the entire 430 head of cattle contained in this shipment; that he sold 423 head at $4.80 per cwt., 5 badly bruised calves at $2.50 per cwt,. and 2 of the calves were in such crippled condition that he had to sell them for $2.50 each. This shipment consisted of calves, good, well-bred Panhandle calves.

[4] From the evidence thus above set out, and as shown by the entire record, we are unable to hold that there was no evidence to support the verdict of the jury, and, as held by a long and almost unbroken line of decisions in this state, the verdict of the jury should not be disturbed, if there is any evidence in support of it. Carter v. Carter, 5 Tex. 102; Lathan v. Selkirk, 11 Tex. 321; book 1, Texas Notes, 425, 989; Ward v. Bledsoe, 32 Tex. 253; book 2, Texas Notes, 303, and list of cases cited in Green's Digest, vol. 1 (Appeal and Error) col. 701, § 1029, too numerous to set out here.

[5] Appellants, by their second assignment of error, complain that the court erred in paragraph 4 of his general charge to the jury. It is unnecessary to here set out the charge excepted to, for the reason that said assignment is not supported by a sufficient statement to enable us to consider the same. The statement given in appellants' brief is as follows, "The court charged the jury in paragraph 4 of his main charge, as set out in this assignment (transcript, pp. 17, 18)," and does not undertake to show that the balance of the court's charge did not cure the error, if any, nor that appellants were injured thereby. In the case of Wirtz v. G., H. & S. A. Ry. Co., 132 S. W. 513, the Court of Civil Appeals for the First Supreme Judicial District says: "It is incumbent upon appellant to show by a proper statement in his brief that the charge com-

plained of is not only incorrect in the abstract, but that it probably operated to his prejudice in the trial. The only statement subjoined to the assignment and proposition under consideration is that 'the court gave the special charge complained of in this assignment, which is referred to.' Rule 30 (94 Tex. 660 [67 S. W. xvi]), requires that each point under each assignment shall be stated as a proposition, unless the assignment shall sufficiently disclose the point, and rule 31 [94 Tex. 660, 67 S. W. xvi] provides that to each of said propositions there shall be subjoined a brief statement, in substance, of such proceedings, or part thereof, contained in the record as will be necessary and sufficient to explain and support the proposition with reference to the pages of the record. Following an assignment or proposition challenging the correctness of a charge, the appellant should make a sufficient statement of the evidence, with reference to the pages of the record, as may be necessary to show, not only that the charge was unwarranted by the facts proved, but that it probably operated to his prejudice." We are further of the opinion that there is no merit in the objection raised under this assignment, when the paragraph complained of is read in connection with the text of the entire charge.

[6] Appellants, by their third assignment, complain that the court erred in refusing to give special charge No. 1, requested by appellants. We are unable to consider the question raised by this assignment, for the reason that it does not affirmatively appear from the record that said charge was refused by the court. Appellees contend in their brief that said charge was given. On an examination of the record, in an effort to determine the question thus raised, we find that appellants' special charges Nos. 2 and 6, as set out in the transcript, directly follow the main charge, and are signed by the judge, and are neither marked "Given," nor are they marked "Refused," and there is nothing upon the face of the record thus made to enable us to determine whether or not they were in fact refused or given, except the inference to be indulged from the arrangement observed in preparing the transcript. The two charges, not marked either "Refused" or "Given," follow the main charge of the court; then appellants' special charges, Nos. 1, 3, 4, and 5 follow each of the same, being indorsed "Refused," from which it would appear that the charges given were so arranged as to follow the main charge of the court, being taken out of their numerical order, and then the charges refused were consecutively given; but, as above stated, we are unable to hold that the charge in question (No. 2) was refused by the court.

[7] We are further of the opinion there was no error in the refusal of the court to submit to the jury appellants' fourth special charge, as complained of in his fourth as-

signment, defining negligence; the court having, in its general charge, correctly defined that term as follows: "You are further instructed that in the transportation of said calves from Tulia, Tex., to Kansas City, Mo., it was the duty of the defendants, in order to avoid injury to said calves, to exercise, in the handling of the train in which said cattle were transported, such care, prudence, and caution as an ordinarily careful, prudent, and cautious man would have exercised under like circumstances, and if you find and believe from the evidence that the defendants failed to exercise such care, prudence, and caution in the handling and managing said train, such failure, if any, would constitute negligence; but, if you find and believe from the evidence that the defendants did use such care, prudence, and caution in the handling of said train, then they would not be negligent with respect thereto." T. & P. Ry. Co. v. Tribble, 67 S. W. 891.

We also conclude that there is no merit shown by appellants' fifth assignment, complaining of the refusal of the court to give special charge No. 3, requested by appellants, as, in our opinion, the court's charge covered the issues presented, and made it incumbent on the jury to find that appellants were negligent in the transportation of said cattle between Tulia and Kansas City, before they could find for appellees. C., C. & S. F. Ry. Co. v. Shults, 129 S. W. 845.

[8-10] Appellants, by their sixth assignment of error, complain of the action of the court in admitting in evidence the eighteenth direct interrogatory and answer thereto, contained in the deposition testimony of the witness R. L. Tamblyn, as to what plaintiff's cattle would have sold for on October 21, 1909, if in good condition, and contend that said testimony was inadmissible for the reason that the interrogatory is leading and suggestive of the answer desired, and that the same called for an opinion and conclusion of the witness; and by their seventh assignment complain of the admission in evidence, over their objection, of the nineteenth direct interrogatory and answer, contained in the deposition testimony of the same witness, upon the same grounds as stated under their sixth assignment, and upon the additional ground that the testimony is inadmissible, for the reason that the interrogatory called for an answer upon facts not in evidence, but upon the assumption of the fact that plaintiffs' cattle were in fact damaged and in bad condition upon their arrival in Kansas City. We are of the opinion that there is no merit shown by these assignments. If it be conceded that the questions objected to were leading, it was within the discretion of the trial court to permit the same; and it does not appear that there was such abuse of this discretion on the part of the court as would constitute reversible error. Campbell v. Fisher, 24 S. W. 663; Dud-

ley v. Strain, 130 S. W. 778. Said assignments further fail to show any injury to appellants because of the matters complained of. S. A. Traction Co. v. Bryant, 30 Tex. Civ. App. 437, 70 S. W. 1015; De Lavega v. Leaque, 2 Tex. Civ. App. 252, 21 S. W. 565; Lee v. Stone, 57 Tex. 450; Pacific Express Co. v. Dunn, 81 Tex. 85, 16 S. W. 792. We are further of the opinion that said witness, as shown by the evidence, was fully qualified to give an opinion upon the matters inquired about. It appearing that he had had 12 years' experience as a salesman of cattle on the Kansas City market and about 20 years experience in handling and selling cattle; that he knew and saw the cattle, sold the same involved in this shipment, and knew the condition of the market. And it further appearing that there could be no reasonable question upon the entire evidence, as shown by the record, as to the fact that the cattle were in fact damaged and in bad condition upon their arrival in Kansas City.

[11] Appellants, under their eighth assignment, complain of the action of the court, over their objection, in admitting in evidence the twenty-first direct interrogatory and answer thereto, contained in the deposition testimony of said witness Tamblyn, as to the effect it has upon the salability of cattle to keep them confined in a car for 24 hours after they have been kept on the cars for from 36 to 48 hours, on the ground that said testimony was inadmissible, for the reason that the answer to said interrogatory is not responsive to the question propounded. The question objected to is as follows: "State the effect it has on the salability of cattle to keep them confined in the cars for a period of 24 hours after they have been kept on the cars for from 36 to 48 hours." To which the witness answered: "When cattle are delayed en route to market 24 hours after they have been on the cars for 36 to 48 hours, it not only causes an extra shrinkage, but damages the appearance and selling value of the cattle as well. This is especially true of calves, which cannot stand as hard a trip to market as grown cattle. They go to pieces faster and lose much more than grown cattle in the same way." We are of the opinion that the objection made is hypercritical, and there is no merit in the assignment. It is held by many decisions in this state that a witness may state facts, other than those directly inquired about, if closely related thereto or explanatory thereof. The witness here appeared to have answered the question propounded somewhat more fully than necessary; but we think the matters embraced in his answer related to the matter inquired about, to the extent of making the whole answer given admissible in evidence. Graham v. Stephens. 15 Tex. 88; Foster v. Speer, 22 Tex. 228; Herbert v. Butterworth, 23 Tex. 251, and Burleson v. Hancock, 28 Tex. 84.

[12] Appellants, by their ninth assignment,

complain of the action of the court in admitting in evidence the testimony of the witness Gray as to the kind of runs he made in shipping cattle from Amarillo and Canyon City, Tex., to Kansas City, Mo., in 1906, on the ground that the same is irrelevant and immaterial and incompetent to prove what would constitute a reasonable run between Tulia, Tex., and Kansas City in 1909, and for the further reason that runs between other and different points than the ones between which this shipment moved are irrelevant and immaterial to prove what would constitute a reasonable run in this case; and that said testimony was incompetent, for the reason that the time referred to in said question and answer is too remote to determine what would constitute a reasonable run at the time plaintiffs' cattle were shipped. The witness testified: "I have been shipping since 1872. I have been shipping from the Panhandle since 1884. I have shipped from Colorado City, Clarendon, Amarillo, and Canyon since 1888, and have shipped from Amarillo over the Santa Fé, and have also shipped from Canyon City over the Santa Fé, shipping over the same roads as I do when shipping from Tulia now. I know what ballast is on the track. The roadbed is better now; the rails are heavier, and there are some cut-offs. We formerly went by Washburn over the Ft. W. & D. C. tracks from Amarillo, and thence to Panhandle. We now go direct from Amarillo to Panhandle. In 1906 we went through from Amarillo to Kansas City with cattle in from 26 to 30 hours, and from Canyon City in from 32 to 33 hours, if they did not make us feed en route." We are of the opinion that no reversible error is shown by this assignment, and that the objections made go rather to the weight to be given the same than its admissibility. A., T. & S. F. Ry. Co. v. Davidson, 127 S. W. 895.

Finding no reversible error assigned by appellants, we conclude that the judgment appealed from should be, in all things, affirmed; and it is accordingly so ordered.