MILLER v. GUARANTY TRUST & BANKING CO. et al. (No. 879.)

(Court of Civil Appeals of Texas. El Paso. Dec. 12, 1918. Rehearing Denied Jan. 9, 1919.)

1. SUBROGATION &#9758;31(4) — ASSIGNMENT—SUBSTITUTION OF PARTIES.

Payment of debt through payment of judgment in mechanic's lien suit and procuring assignment of judgment *held* to create privity of contract between assignor, assignee, and debtor, and a substitution of the assignee in the place of the assignor in its relation to the debt.

2. SUBROGATION &#9758;31(4)—PARTIES ENTITLED —"VOLUNTEER."

Bank which paid judgment in mechanic's lien suit and took assignment of all rights of assignor *held* not a "volunteer" in payment of the debt.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Volunteer.]

3. SUBROGATION &#9758;1—NATURE OF RIGHT.

Right of subrogation does not necessarily depend upon privity of contract between the one paying the debt and the creditor or debtor, but arises from the nature of the transaction.

4. SUBROGATION &#9758;31(4) — ASSIGNEE OF JUDGMENT—RIGHTS.

Bank which paid judgment in mechanic's lien suit and took assignment under an arrangement with one of judgment debtors that debt should be carried forward under a new arrangement *held* subrogated to rights of assignor, so that, where judgment was set aside because of lack of service upon one defendant, the original debt and lien would be recognized as a subsisting charge upon the property.

5. SUBROGATION &#9758;31(4)—BENEFIT OF LIEN.

Purchaser of notes at receiver's sale, part of consideration for notes being amount of debt represented by judgment in mechanic's lien suit, which judgment was set aside, *held* entitled by reason of doctrine of subrogation to valid lien on premises to secure payment of amount paid for notes with interest.

6. MECHANICS' LIENS &#9758;204—ASSIGNMENT—AS INCIDENT TO THE DEBT.

An assignment of builders' lien without an assignment of the debt would be without meaning or use, and the lien follows the debt.

7. INTEREST &#9758;36(1) — CLAIM FOR REIMBURSEMENT—PAYMENT OF NOTES.

Intervener's suit being on an implied contract for reimbursement for what he had paid, the interest to be recovered is the legal rate and not the rate stated in the notes sued on.

8. LIMITATION OF ACTIONS &#9758;95(1) — IGNORANCE OF CAUSE OF ACTION.

Assignee of judgment being subrogated to the original debt in case the judgment, which was based on a record showing proper service, were invalid, the statute of limitations would not run against him, as to the original debt, until he had knowledge of invalidity of the judgment because a judgment debtor had not been served with citation.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by the Guaranty Trust & Banking Company and others against Adelle Miller and others. From the judgment rendered, defendant named, by her guardian ad litem and next friend, W. H. Anderson, appeals. Judgment reformed, and as reformed affirmed.

M. W. Stanton, of El Paso, for appellant.
J. E. Quaid, C. L. Vowell, Jos. U. Sweeney, W. M. Coldwell, and Turney & Burges, all of El Paso, for appellees.

WALTHALL, J. In view of the voluminous record presented, we will at the outset make a statement of the facts, none of which are disputed, and, as well as we can, in the order in which the record shows them to have occurred:

From the record, it is made to appear that on February 12, 1904, Mark Miller and wife, Adelle Miller, owned, as a part of their community estate, lots 1 and 2 in block 2 in Mundy Heights addition to the city of El Paso;

---

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the lots then being unimproved. On said day, Mark Miller and Adelle Miller entered into a written contract with H. F. Brown, a contractor and builder, for the erection by said Brown, at his own expense, of a cottage on said lots; the said contract being duly acknowledged by the parties, filed for record, and duly recorded on February 16, 1904. The contract duly recited that Brown should have an express mechanic's, builder's, and contractor's lien on the said lots and improvements to secure the contract price of $2,500 for erecting said building, $500 of said amount paid in cash and $2,000 of said amount to be paid to said Brown in four installments of $500 each and evidenced by four promissory notes, each in the sum of $500 and due and payable respectively in one, two, three, and four years after said date, and providing that on failure to pay any one of said notes at maturity, at the option of the holder, all the notes should become due and payable. Brown erected said cottage according to contract, and the said four notes were executed by Miller and wife and delivered to Brown.

Thereafter, Brown indorsed the said four notes in blank and delivered them to Burton-Lingo Company, a building material company, which had theretofore furnished the material and advanced the money to Brown to erect said building. Credits for amounts paid by Miller are indorsed on the back of each note. The unpaid balance of said Brown notes not being paid at maturity, Burton-Lingo Company brought suit thereon in the district court of El Paso county, on the 2d day of February, 1908, against Mark Miller and Adelle Miller to recover the amount due and to foreclose the said mechanic's, builder's and contractor's lien. The file number of that suit is 7388. Two citations were issued in said cause, one each to Mark Miller and Adelle Miller. The citation to Mark Miller was duly served. The return on the citation to Adelle Miller showing service and an attorney appearing and answering for her on the trial, the trial court rendered judgment therein.

On special issues submitted by the court in the case at bar, the jury found: That Adelle Miller was not duly served with citation in the case of Burton-Lingo Company v. Mark Miller and Adelle Miller in cause No. 7388; that she did not file an answer in the case through an attorney authorized to represent her, nor did she appear at the trial in person or by attorney; that she had no notice of the pendency of the suit; that at and prior to the execution and delivery of the Brown contract the property in controversy was the homestead of Mark Miller and his wife, Adelle Miller; that the officers and attorneys of the Guaranty Trust & Banking Company had no notice that, at the trial of the case of Burton-Lingo Company v. Mark Miller and wife, Adelle Miller did not appear in person and was not present in person or represented by an attorney authorized to do so; the Guaranty Trust & Banking Company, acting by and through its authorized agents, agreed, in substance, with Mark Miller that judgment should be entered in the case of Burton-Lingo Company v. Mark Miller and Adelle Miller; that the Guaranty Trust & Banking Company should acquire said judgment from the Burton-Lingo Company, have an order of sale issued thereon, should through an agent buy the property at the sale, should cause the said property to be deeded by its agent to Mark Miller for a consideration in excess of the amount of the mechanic's lien notes on which said judgment was obtained, said consideration to be evidenced by Mark Miller's promissory notes, secured by a lien on the property in controversy. There being, apparently, a conflict in the next two findings, we quote them:

"Question No. 8. Do you find from a preponderance of the evidence that said agreement was carried out?" To which the jury answered: "No."

"Question No. 9. Do you find from a preponderance of the evidence that said agreement was made and carried out without the consent and acquiescence of Mrs. Adelle Miller?" To which the jury answered: "Yes."

The Burton-Lingo Company suit against Miller and wife, No. 7388, resulted in a judgment in said cause on the 5th day of March, 1910, in favor of Burton-Lingo Company against Mark Miller and Adelle Miller for the unpaid balance of the Miller-Brown notes in the sum of $2,350, with interest, costs, and foreclosure of the mechanic's, contractor's, and builder's lien; no personal judgment being rendered against Mrs. Miller. An order of sale of said property under said judgment in cause No. 7388, with bill of costs annexed, of date April 18, 1910, was duly issued, levy made, sale published, property sold to Sam D. Ware, and sheriff's deed to Ware executed, and return of sale made.

Burton-Lingo Company, on March 5, 1910, in consideration of the said sum of $2,350, paid by the Guaranty Trust & Banking Company to Burton-Lingo Company, duly transferred and assigned to the Guaranty Trust & Banking Company the said judgment it had theretofore obtained against Mark Miller and wife in cause No. 7388, and at the same time, and by the said instrument, also transferred to the Guaranty Trust & Banking Company all of the rights and interest it had in said judgment, or in or to the said real estate described (being that in controversy) by reason of said judgment, or by reason of the lien contract and notes upon which said judgment was rendered, and further gave to the said Guaranty Trust & Banking Company full power and authority to demand and receive the amount of said judgment to its

own use, and to execute proper discharges and releases, and to sue out execution or order of sale and all other process necessary to the enforcement of the said judgment. By an arrangement between Mark Miller and the Guaranty Trust & Banking Company, in consideration of the amount of the Burton-Lingo Company judgment paid by Guaranty Trust & Banking Company, the accrued interest thereon, and additional sums of money paid to Mark Miller by the Guaranty Trust & Banking Company, and certain notes of Mark Miller held by the bank canceled and returned to Miller, amounting in the aggregate to $5,-627.25, this sum evidenced by four promissory notes, signed by Mark Miller and payable to Sam D. Ware, representing the said bank, and expressing and retaining a vendor's lien on the property, Sam D. Ware and wife conveyed the property in question to Mark Miller. Mark Miller also executed to Sam D. Ware certain interest notes, a deed of trust on said property to W. B. Ware, as trustee, to secure the said notes. All of said notes were indorsed without recourse by Sam D. Ware, and by him assigned to the Guaranty Trust & Banking Company, together with the said deed of trust and the said vendor's lien, and all rights, equities, and interest then had by them by reason thereof.

The said Miller-Ware notes not having been paid at maturity, the Guaranty Trust & Banking Company, on the 11th day of December, 1911, brought this suit against Mark Miller and Adelle Miller and S. D. Ware and wife and W. B. Ware, trustee. The first count in the petition is the ordinary action of trespass to try title to recover the premises in controversy; the second count set up the ownership of the Miller-Ware notes and asked for judgment against Mark Miller on said notes and the foreclosure of the vendor's lien expressed in the notes and the said deed of trust lien. Adelle Miller having become insane, W. H. Anderson was appointed her guardian ad litem. Numerous pleadings and amendments thereto were filed by all the parties litigant up to the rendition of the judgment on the 11th day of September, 1917. As we conceive it, the material issues finally joined on the trial, after numerous amendments and trial amendments, are substantially the following:

The issue made by the Guaranty Trust & Banking Company is: That by the execution and delivery by Mark Miller and Adelle Miller to Brown of the mechanic's, builder's, and contractor's lien and notes, and the erection of said building by Brown, and the assignment by Brown of said notes and the mechanic's, builder's, and contractor's lien to Burton-Lingo Company, the judgment obtained by said Burton-Lingo Company and the transfer and assignment to plaintiff bank, by Burton-Lingo Company, of all of its rights

and interests in its said judgment against Miller and wife on said notes and the foreclosure of said lien, and the lien contract on which said judgment was rendered, and likewise, by the transfer and assignment to it of the Miller-Ware notes and trust deed lien by S. D. Ware, as hereinabove set out, it is the legal owner and holder by purchase and subrogation of the said Miller-Ware notes and liens, and it asked judgment establishing same and foreclosing its said liens on said lots.

The Guaranty Trust & Banking Company having become insolvent, John H. Harper was appointed receiver, in cause No. 10079, Forty-First district court, El Paso county. The receiver adopted the pleadings of the banking company as to its ownership of said notes and liens; that, acting under the orders of the court, he took possession of and offered for sale the said Miller-Ware notes and mortgage lien and thereafter, on the 4th day of May, 1915, made sale of same to Winchester Cooley, and that said sale was in all things approved by the court, and pleaded that, if mistaken that said sale conveyed to Cooley the title to the notes and lien and causes of action, then the receiver was the owner thereof. Intervener, Cooley, adopted the allegations of receiver, Harper; pleaded the facts heretofore stated as pleaded by the Guaranty Trust & Banking Company and the receiver; and alleged that by reason thereof he is now the owner and holder of said four Miller-Ware notes, the said liens and causes of action, and that by reason of his purchase of said Miller-Ware notes he became subrogated to the right and title to said notes, lien, judgment, etc. Guardian ad litem, Anderson, after various pleas and exceptions, which we need not state here, pleaded the statute of limitation of two and four years as to all causes of action; general denial; that the said property was at all times and is the homestead of herself and husband; states the filing of suit by Burton-Lingo Company and the issuance of citation, the service of citation upon Mark Miller; that, while the return upon the citation states service upon her, service of citation was not had upon her in cause 7388; that, while an attorney had appeared and answered for her in said cause, she denied that she had at any time authorized an attorney to appear and answer for her; pleaded the agreement or arrangement entered into between the Guaranty Trust & Banking Company and her husband, Mark Miller, as set forth hereinabove, and in which judgment was entered in favor of said Burton-Lingo Company, a foreclosure sale under said judgment, of the mechanic's, builder's, and contractor's lien had, and purchase made by Ware and resale of said property to Mark Miller for the consideration stated, was false and fraudulent,

and said judgment was rendered and proceeding had thereunder without her knowledge and consent. We need not state the issues tendered as to parties other than as above. As to Adelle Miller, the only party appealing, the trial court set aside the judgment entered in cause No. 7388 in favor of Burton-Lingo Company against Mark Miller and Adelle Miller on the Miller-Brown notes and foreclosing the mechanic's, builder's, and contractor's lien on the said lots; but the Miller-Brown notes never having been paid and the said lien discharged, and the Miller-Brown notes being a part of the consideration for the Miller-Ware notes purchased by Cooley at the receiver's sale, the trial court found that Winchester Cooley, intervener, has a valid mechanic's, builder's, and contractor's lien on the property described by reason of the contract of February 12, 1904, entered into between Mark Miller and Adelle Miller and Brown, and ordered the foreclosure of said lien to satisfy the Miller-Brown notes, amounting to the sum of $4,010. From that judgment, Adelle Miller, through her guardian ad litem, and next friend, Anderson, takes this appeal.

### Opinion.

Appellant, Adelle Miller, through her guardian ad litem and next friend, Anderson, presents 36 assignments of error and many propositions thereunder as grounds for reversal and rendition of judgment in her favor. We will not undertake to discuss each of the assignments and propositions in detail, but will consider what we conceive to be the material and controlling issues presented by the record. It is unquestionably true that the premises in controversy were the homestead of Mark Miller and his wife, Adelle Miller, on the 12th day of February, 1904, and that on that date they each entered into and executed the four negotiable promissory notes to H. F. Brown aggregating the sum of $2,000 as the unpaid part of the consideration for the erection by Brown on said premises of the cottage, and at the same time executed in writing in due form and delivered to Brown a mechanic's, builder's, and contractor's lien on said premises to secure the payment of said four notes and the interest agreed therein to be paid. No question is made by brief or argument, but that Brown fully performed his part of the contract in erecting said cottage and duly indorsed, transferred, and assigned, for a valuable consideration, the said four notes (which we will designate as the Miller-Brown notes) and the said lien contract, to the Burton-Lingo Company, and that said company, by direct purchase and payment of the consideration expressed, became the owner of said notes and lien contract. It is not claimed that Mark Miller and Adelle Miller, or either of them, at any time made payment of the said notes, or in any wise discharged said lien contract other than by such credits and partial payments as are indorsed on some one or more of said notes. The notes by their terms became due, and a suit was duly filed thereon by Burton-Lingo Company against Mark Miller and Adelle Miller, praying judgment against them and the foreclosure of the mechanic's lien, and citations were duly issued to Mark Miller and Adelle Miller and service had on Mark Miller, but no service was had on Adelle Miller, though the sheriff's return showed service, and an attorney filed answer for her and appeared and represented her on the trial at the instance of Mark Miller, but without authority from her to do either. The record shows that, at that stage of the proceeding, Mark Miller had knowledge of the fact that his wife had not been served with citation, had not employed an attorney to represent her on the trial, and that he was the only person having such knowledge. The record further shows that, not only no person other than Mark Miller had knowledge of the want of service on his wife and want of authority from the wife to file answer and appear for her at the trial, but the record shows that such knowledge was not made known or imparted to any person prior to the time of the filing of the answer for Adelle Miller in the case at bar. Judgment was entered in favor of Burton-Lingo Company against Mark Miller and Adelle Miller on said notes, and foreclosing said mechanic's lien.

Before and in anticipation of the foreclosure sale of the property in controversy, Mark Miller and the Guaranty Trust & Banking Company entered into the arrangements hereinabove stated, by which it was agreed and carried out that the Guaranty Trust & Banking Company should purchase of Burton-Lingo Company the said judgment, and that said foreclosure sale should be made. Ware became the purchaser, a resale of said property for the consideration stated including the amount of the Miller-Brown notes in the Miller-Ware notes, and a transfer and assignment by Ware of the Miller-Ware vendor lien notes to the Guaranty Trust & Banking Company. This arrangement was carried out, but without the knowledge or consent of Adelle Miller, and without her in any way being made a party to the transaction.

This suit filed by the Guaranty Trust & Banking Company, and by the receiver, and by the intervener, appellee here, is based on the Miller-Ware notes and the rights growing out of the Burton-Lingo Company judgment and assignment thereof to the Guaranty Trust & Banking Company, and the right of subrogation by reason of having paid the Miller-Brown notes and the debt evidenced thereby. The trial court evidently treated the answer of Adelle Miller as being in the nature of a bill of review of the case of Burton-Lingo Co.

v. Mark Miller and Adelle Miller, No. 7388, and as being a direct attack on the judgment rendered therein, and set that judgment aside on the findings of the jury stated herein; but it not appearing either by pleading or proof that the debt evidenced by the Miller-Brown notes 'and the mechanic's, builder's, and contractor's lien on the premises in controversy had ever been paid off or discharged by Miller and wife, but was carried into and formed a part of the consideration of the Miller-Ware notes to the extent and sum of $4,010, and having found that, by reason thereof, intervener Cooley, being the purchaser of said notes at the receiver's sale, has a valid contractor's and builder's lien on said premises to the full amount of said notes, the court, while setting aside the judgment in the case of Burton-Lingo Co. v. Mark Miller and Adelle Miller, rendered judgment against Mark Miller for said $4,010 and foreclosed said contractor's and builder's lien in favor of intervener Cooley as to each of the Millers for the full amount of the unpaid balance of the Miller-Brown notes as expressed and represented in the Miller-Ware notes. Appellant, Adelle Miller, through her guardian ad litem, by several assignments, attacks the said judgment foreclosing the mechanic's and builder's lien as to her, but all tending to the one question: Did intervener, Cooley, by his purchase at the receiver's sale of the Miller-Ware notes, acquire the legal or equitable title or rights of Burton-Lingo Company to the Miller-Brown notes, or the claim or debt of which the notes were but the evidence, and the right to foreclose the mechanic's lien as to the full amount of the unpaid Miller-Brown notes. There was no direct assignment and delivery of the Miller-Brown notes, except that ·of Brown to Burton-Lingo Company. Burton-Lingo Company assigned to the Guaranty Trust & Banking Company the judgment it had obtained in the Miller-Brown notes, and all its rights obtained by reason of that judgment, as the consideration for the payment by the Guaranty Trust & Banking Company to it of the judgment against the Millers; but the record does not show an assignment or delivery by Burton-Lingo Company to the Guaranty Trust & Banking Company of the Miller-Brown notes, nor an assignment of the building contract lien. Whatever rights, title, or interest in or to the mechanic's and builder's lien the Guaranty Trust & Banking Company received by the assignment to it of the judgment, it was through subrogation and by reason of the fact that, in paying the judgment, it paid the debt Mark Miller and Adelle Miller owed to Burton-Lingo Company, as the assignee of Brown, for the erection of the building.

[1-3] In the payment of the debt through the payment of the judgment and the assignment of the judgment, there was privity of contract between the Guaranty Trust & Banking Company and Burton-Lingo Company and with Mark Miller, i. e., by contract there was a substitution of the Guaranty Trust & Banking Company in the place of Burton-Lingo Company in its relation to the debt. But there are numerous decisions which recognize the doctrine that, if a third party pay a debt in pursuance of an agreement between him and the debtor that upon his so doing he shall be subrogated to the creditor's rights, the agreement will be given effect, and such third party will stand in the place of the creditor as to all persons interested in the property or the security. Fievel v. Zuber, 67 Tex. 275, 3 S. W. 273, and cases there cited. We think such condition is shown in the case at bar as to the Guaranty Trust & Banking Company. But more than such bare agreement, it took an assignment of all of the rights Burton-Lingo Company had in the matter of the Miller-Brown contract. Under the facts shown by the record, the Guaranty Trust & Banking Company is in no sense a volunteer in the payment of the debt. The right of subrogation, although allowed in a proper case where there is a privity of contract, does not necessarily depend upon a privity of contract between the one paying the debt and the creditor or debtor. It arises from the nature of the transaction. Murphy v. Smith, 50 S. W. 1040.

In Fears v. Albea, 69 Tex. 437, 6 S. W. 286, 5 Am. St. Rep. 78, after referring with approval to the Fieval v. Zuber Case, supra, the Supreme Court of this state said:

"It is said upon high authority that when a mortgage is paid by one who is under no obligations to pay it, although he does not take a formal assignment, he is subrogated to the rights of the mortgagee in the mortgaged property, and holds the title so acquired against subsequent incumbrancers, although he had also acquired the equity of redemption. In such case, no proof of intention on his part to keep the mortgage alive is necessary to give him the benefit of it. Even if a person advancing money to pay a mortgage, under an agreement with the owner of the equity of redemption that it should be assigned to him as security for the money advanced, takes a discharge of the mortgage, he is entitled to be subrogated to the rights of the mortgagee and have the discharge vacated."

[4] It seems to us that the undisputed facts in the case show that the Guaranty Trust & Banking Company, by paying off and discharging the debt Mark Miller and Adelle Miller then owed Burton-Lingo Company, and taking an assignment of it under the said agreement and arrangement with Mark Miller that the debt itself should be carried forward under the new arrangement and was so carried, though in a changed form of indebtedness, but the same debt and on the same property, the Guaranty Trust & Banking Company would be subrogated to the

rights of Burton-Lingo Company as to the original debt, and the judgment of Burton-Lingo Company having been set aside at the instance of Mark Miller and Adelle Miller, the Guaranty Trust & Banking Company would be before the court in that cause No. 7388, had the pleadings filed in this cause been filed in that case, as the purchaser or assignee pendente lite of the debt upon which the suit was brought. In Boone & Scarborough v. Miller, 86 Tex. 74, 23 S. W. 574, where a trustee's sale was void because not made at the courthouse door as provided in the deed of trust, the Supreme Court said:

"The parties after the sale stood as they did before the ineffectual attempt at sale took place." Jones on Mortgages, § 1902.

Has the original debt to Brown or to Brown's assignee, Burton-Lingo Company, the legal owner and holder of the notes, been discharged? It is evident that it has not been paid by either of the Millers, or by the property upon which, by their express agreement, it was charged, and which was to be the primary source from which payment was to come. It is not claimed that the foreclosure sale of the property under the Burton-Lingo Company judgment had the effect to either release the property from the lien or to pay the debt. The foreclosure sale having been set aside, the Miller debt for the erection of the building having been paid by the Guaranty Trust & Banking Company, it is subrogated to the rights of Burton-Lingo Company in the notes and mechanic's lien. Under such circumstances, the lien on the property not being extinguished, equity required, if necessary, that justice might be done all parties, that the original debt and the builder's lien should be recognized as a subsisting charge upon the lots. Monroe v. Buchanan, 27 Tex. 243. In that case, the Supreme Court said:

"It is a matter of no importance whether the note was in actual existence or not, or whether it was still susceptible of assignment as negotiable paper. The facts show that the debt evidenced by it was unpaid."

For reasons stated, we think the Guaranty Trust & Banking Company was subrogated to all of the rights that Burton-Lingo Company had at the time and since the rendition of the judgment against Mark Miller and Adelle Miller to the full amount of said debt,

[5, 6] Was the intervener, Winchester Cooley, by reason of his purchase of the Miller-Ware notes at the receiver's sale, and the payment by him of $50 therefor, subrogated to all of the rights of the Guaranty Trust & Banking Company? It is claimed that he was not, his claim being remote and there being no direct assignment to him of the Miller-Brown notes or the builder's lien. Certainly, an assignment of the builder's lien without an assignment of the debt would be with-

out meaning or use. The lien follows the debt; the reason being that the principal thing, the debt, always draws to it that which is incidental or accessory, so that the principal thing, the debt, cannot take one direction, and that which is incident to it another direction. Perkins v. Sterne, 23 Tex. 563, 76 Am. Dec. 72. Had the Miller-Brown notes been assigned and delivered to the intervener, he would, in that instance, be the legal owner and holder of the note and lien, and the equitable doctrine of subrogation would have no application. There would be no substitution of another person in the place of the creditor to whose right he succeeds in relation to the debt. In the instance of the one owning and holding the note, the action would be on the express contract, the notes; but, where one succeeds the owner in his relation to the debt by the payment of it, he thereby becomes substituted, in place of the owner and holder, whether there is an assignment to him or not, and his right is by subrogation, upon the implied promise, his action an equitable one, and independent of any actual contractual relation. As said by the Supreme Court in Monroe v. Buchanan, supra, it is a matter of no importance whether the note was in actual existence or not, or whether it was still susceptible of assignment as a negotiable paper. His right arises by reason of the existence of the debt and his payment of it in whole or in part. The facts in this case, as in that, show that the debt evidenced by the notes, the full consideration of the Miller-Brown notes constituting the principal part of the Miller-Ware notes, was unpaid, and that the receiver, for the consideration stated, passed it to Cooley, as far as he could do so. We have carefully read the several authorities referred to by appellant, and do not think we are in conflict with any of them. We need not review them. Appellant insists that subrogation can arise only in favor of one who has actually paid a debt and for the amount only actually paid. The full amount of the Miller-Brown debt was written in and formed the principal part of the Miller-Ware notes. Intervener, at the receiver's sale, bought said notes, paying therefor the sum of $50. The principle of subrogation has often been stated to be that it gives indemnity, and no more; that is, it is an equitable assignment of the debt paid, and the one paying is entitled to be reimbursed for what he has paid, and to that extent only, in discharging the indebtedness. Faires v. Cockerell, 88 Tex. 428, 31 S. W. 191, 639, 28 L. R. A. 528. In Cleveland v. Carr, 40 S. W. at page 410, the Court of Civil Appeals, through Judge Williams, said that, according to the reasoning in Faires v. Cockerell, the payment extinguished the debt, but left the party paying a right of action upon an implied promise to recover the amount paid with legal interest. That right passed

by subrogation, but only as a means of enforcing his right, which was to recover the amount paid, with legal interest. To the same effect is Burns v. Ledbetter, 56 Tex. 282, and Close v. Fields, 2 Tex. 232.

[7] It is insisted by appellant that, if the intervener recovers at all, the rate of interest on the amount recovered should be the legal rate of 6 per cent. and not 8 per cent. as allowed by the court. Under the decisions already recited, we think the contention must be sustained. The intervener's suit is not on the notes, but on the implied contract for reimbursement for what he has paid on the debt, and the interest to be recovered is the legal rate and not the rate stated in the note. Intervener's right of subrogation was first asserted more than two years after the purchase by him of the Miller-Ware notes and the payment to the receiver of the purchase price thereof. It is claimed by Adelle Miller that the intervener's cause of action is barred by the statutes of limitation of two years.

We have found that Mark Miller was the only person who knew that Adelle Miller was not served with citation in the Burton-Lingo Company suit, and that she was not in that suit represented by an attorney authorized to do so, and that these facts were not made known by Mark Miller to any person until about the time Adelle Miller filed her answer in this suit. In our judgment there is no semblance of a fraud on the part of the Guaranty Trust & Banking Company shown in the agreement between it and Mark Miller in the absence of any knowledge of such facts on its part, and, while the grounds on which the court set aside the Burton-Lingo Company judgment are not stated, we apprehend that it was for want of service and appearance, in that case on her part.

[8] To put the statute of limitations in motion, it must appear that the Guaranty Trust & Banking Company had knowledge of the fact that Adelle Miller had not been served with citation, and that she did not appear in person or by attorney in the Burton-Lingo Company suit, because if the record spoke the truth as to service on her, or her personal appearance and answer therein, the suit of the Guaranty Trust & Banking Company and the suit of the intervener would have been on the Miller-Ware notes, as originally brought. On the answer of Adelle Miller denying service of citation and denying her appearance in said suit, and those facts appearing, the cause of action of the Guaranty Trust & Banking Company and intervener was not then on the Miller-Ware notes, but was on the right to be subrogated as having paid the Miller debt, as evidenced by the Miller-Brown notes. In other words, if the Guaranty Trust & Banking Company did not know of the want of service on Adelle Miller, and did not know that she did not appear by

person or by attorney in said cause, and could not have known by the use of proper diligence, the statute would not be a bar to their suit. As said by the Court of Civil Appeals in Cleveland v. Carr, 40 S. W. at page 409, it is not generally true that a plaintiff's ignorance or inability to learn of his cause of action will prevent the statute from running, and that ordinarily the limitation runs regardless of those facts; but in cases like the one at bar, where, without fault of the Guaranty Trust & Banking Company either fraud or facts occur that destroy or set aside the judgment of the court, an exception is made by which a suspension of the running of the statute is allowed until such time as the discovery of such facts ought to be made. There is only one view to be taken of the facts on the issue of limitation in this case, and that is the one that prevents the running of the statute; the facts were testified to by Mark Miller and Adelle Miller and are not controverted. The Guaranty Trust & Banking Company, in the absence of anything to put them upon notice or inquiry, had the right to suppose that the return of the officer spoke the truth, and that the attorney who assumed to appear and file an answer for Adelle Miller in the Burton-Lingo Company suit was authorized by Adelle Miller to do so.

Under the view we take of the case, we think we need not further discuss the issues in detail as presented in appellant's assignments. They have been considered and are overruled. The judgment of the trial court is reformed as to Mark Miller, Adelle Miller, and W. H. Anderson, her guardian ad litem, so as to read that Winchester Cooley, intervener, have a valid contractor's and builder's lien on the premises in controversy to secure the payment of the sum of $50, and interest thereon at the rate of 6 per cent. per annum from the date of its payment to the receiver, viz., the 4th day of May, 1915, until paid, and that said lien be, and here now is, in all things established and foreclosed; and in all other respects the judgment of the lower court is in all things affirmed. The costs of this appeal are taxed against the intervener.

HARPER, C. J. (concurring). I am now strongly inclined to the opinion, though I do not dissent, that the facts of this case show title in Cooley by reason of assignments by contract from Brown to Burton-Lingo Company and from the latter to the Guaranty Trust & Banking Company of the original Brown notes and mechanic's lien, and last, by judicial sale by the receiver to him, made under order of the court and duly confirmed, and cannot be collaterally attacked. Guaranty State Bank & Trust Co. v. Thompson, 195 S. W. 960. That the equitable doctrine of subrogation in its true sense does not apply,

but that when the court, through its receiver, sold the Mark Miller note ($5,627.25) sued upon, as one of the assets of the bank, and it containing the original Brown obligation, Cooley succeeded to all the rights of the bank, and when, in the instant case, the judgment in No. 7388 was set aside and all muniments of title executed under the Mark Miller bank agreements were set aside, it left the original suit pending with the right of the bank to proceed, had it not parted with its title through the sale to Cooley. Having done so, Cooley is now in the position of the bank and is entitled to judgment for the whole of the debt and to foreclose the Brown mechanic's lien upon the homestead.