# FIRST DISTRICT, FEBRUARY, 1893.

---

Heirs of Tomas de la Vega v. J. C. League, John W. Lapsley, et al.

No. 84.

1. **The La Vega Eleven League Grant Valid.** — The testimonio of May 5, 1832, which was extended by La Vega before Juan Gonzales, regidor and second alcalde of the city of Leona Vicario, conferring upon Samuel M. Williams power to procure title and sell the eleven league concession to La Vega, is in due form of law, and properly authenticated, and the same was admissible in evidence as an ancient instrument.

2. **Authentication for Record.**—See statement of the case by the court for evidence of authentication of a testimonio, dated in 1832, of a concession of eleven leagues of land made in 1830, by the government of Coahuila and Texas, held sufficient to authorize its registration and admission in evidence.

3. **Title of the La Vega Heirs and their Vendees.**—La Vega having sold his concession to Stephen F. Austin, and at the request of Austin having by the testimonio of 1832 constituted Samuel M. Williams his attorney in fact to procure title for his eleven leagues, take possession, and sell them for such prices and upon such terms as he might see fit; and Williams having procured title, been placed in possession, and sold, his vendees have better title than the heirs of La Vega or their vendees; title not having been claimed by La Vega until

1868, in which year he instituted suits in the United States Circuit Court, seeking to have the testimonio cancelled, but failed in all of them.

4. **Evidence of Character.**—It being claimed by La Vega that the testimonio was fraudulently obtained, and was forged, it was not error to admit evidence of the character of Stephen F. Austin and Samuel May Williams.

5. **Title under the La Vega Testimonio better than the Flemming Grant.** — The Peter Flemming league was located upon the La Vega grant, and in this suit the McPhauls claimed under it. This grant was void as against all persons holding under the La Vega grant and sale by Williams.

6. **Evidence Admissible as Res Gestæ.** — In two suits filed in the United States Circuit Court by La Vega, against Lapsley, League, and others, the object of which suits was to have the testimonio of 1832 to Williams cancelled, upon the ground of fraud and forgery, and to recover damages for the use and occupation of the land by the defendants, the judgments rendered were adverse to La Vega. Another suit in said court, between the mother and father of the McPhauls (intervenors in this suit) and Lapsley, League, et al., involved the title of the Peter Flemming league. Therein La Vega intervened, and again brought in issue the validity of the testimonio of 1832, and said suit was decided in favor of Lapsley, League, et al. The records in these three cases were admissible as evidence in this case.

7. **Answer of La Vega held Inadmissible in Evidence.**—In one of the Circuit Court cases (No. 37 in chancery) in response to a cross-bill of discovery filed by Lapsley, League, et al., La Vega filed a sworn answer. The court below did not err in refusing to allow this answer to be read in evidence.

8. **Immaterial Errors by Trial Court.**—If error was committed by the court below in the admission or exclusion of evidence, such errors were immaterial. as no other judgment could have been rendered under the evidence in this case than that which was rendered.

9. **Form of Judgment.**—Suit by the League heirs against Lapsley et al., to recover on a note claimed to be part of the purchase money of the La Vega grant, and other moneys expended in perfecting that title; prayer for foreclosure of a lien upon the land for said debt, and for partition of the La Vega grant between the part owners. See opinion for form of judgment in such case which was affirmed.

10. **Errors not Considered.**—There is no brief filed for any of the plaintiffs in error, nor any appearance for any of them. Defendants in error suggest delay. We have not felt called upon to consider any of the plaintiffs' assignments save such as question the correctness of the judgment in sustaining the title of the defendants in error as purchasers from La Vega through the Williams testimonio.

11. **Errors Assigned by Defendants Against each Other.**—We do not understand that a defendant in error is privileged to assign errors against his codefendants, unless he appeals. Without appeal, he can not require a revision of any alleged error committed in adjudicating upon the rights of himself and his codefendants, as between each other.

Error from Galveston. Tried below before Hon. Wm. H. Stewart.

*Gresham & Jones* and *F. M. Spencer*, for plaintiffs in error.

*E. H. Graham* and *W. W. Kendall*, for estate of T. J. Frow et al., defendants in error, seeking to reform judgment.

*McLemore & Campbell* and *Willie & Ballinger*, for League et al., defendants in error, suggesting delay.

PLEASANTS, ASSOCIATE JUSTICE.—The conclusions of fact reached by the court from the evidence in this cause are: That in 1830 the government of Coahuila and Texas conceded to Jose Maria Aguirre, Raphael Aguirre, and Tomas de la Vega, residents of Coahuila, and Mexican citizens, each eleven leagues of land, the concessions being made under the colonization law of 1825, and under the conditions prescribed by said act.

That in the year 1832 Stephen F. Austin purchased said three concessions from the said Jose Maria and Raphael Aguirre and the said Tomas de la Vega, and in accordance with the request of said Austin, they constituted Samuel May Williams, who was the secretary of Austin's Colony at the time, their attorney in fact, to procure titles for said thirty-three leagues of land, and to take possession thereof, and to sell the same to such person or persons, and for such price or prices, and upon such terms as he, the said Williams, might determine.

That the power thus conferred upon said Williams is evidenced by a testimonio, executed on the 5th of May, A. D. 1832, in the city of Leona Vicario, in the State of Coahuila, by Juan Gonzales, regidor of the ayuentamiento of said city, and second alcalde of the same and its jurisdiction, owing to the sickness of the incumbent of said office, and acting by authority in the absence of a notary within said jurisdiction, with three instrumental witnesses and two assisting witnesses.

That said testimonio was proved for record in 1856, by the affidavit of Juan Seguin, made before the clerk of the County Court of Travis County, and the affidavit of James Hewitson, made before the clerk of the County Court of Galveston County, each affiant averring that he was acquainted with the handwriting of Juan Gonzales, whose signature was to the instrument purporting to be a power of attorney from Jose Maria Aguirre, Raphael Aguirre, and Tomas Vega, and executed on the 5th of May, 1832, before said Gonzales, regidor of Leona Vicario; and that he believed the said signature to be that of said Gonzales; and further, that said affiant was acquainted with the handwriting of each of said persons whose names were signed to said instrument as assisting witnesses; and that said affiant believed the signature of each of said witnesses written upon said instrument was his genuine signature; and that said power of attorney was afterwards duly recorded in said year 1856, in the office of the county clerk for McLennan County, and also in the office of the clerk of the County Court for Falls County.

That said Juan Gonzales, in the following year, 1857, appeared before Peter Dowd, the then clerk of Starr County, and acknowledged that said instrument was executed before him, and that he signed the same, as recited therein, at the request of said Tomas Vega, Raphael Aguirre, and

Jose Maria Aguirre, and by their authority and their direction, and in their presence, and that his signature to said paper is genuine, and that he signed the same as regidor of the corporation of the city of Saltillo, and second alcalde, in the year 1832, as expressed in said instrument; and that the signatures of Jose Nazo Ortiz and Jose N. Moval, signed to said instrument, are the genuine signatures of said witnesses, and that they signed same in his presence as assisting witnesses.

That said testimonio, shortly after the death of Stephen F. Austin, was, with other papers pertaining to his estate, deposited by the representative of said estate in the General Land Office of this State, and remained among the archives of that office from the time it was there placed by said representative until the year 1854, when it was withdrawn by Robert Hughes, counsel for the plaintiff John W. Lapsley, in the prosecution of suits for the ejectment of trespassers upon the said Vega grant. That the signatures of Gonzales and his assisting witnesses in the execution of said power of attorney were again .proved by the depositions of said Juan Seguin and of other witnesses, taken during the pendency of this suit and read upon the trial thereof.

That the said Samuel May Williams procured the title from the proper authority in Austin's Colony for said eleven leagues grant to La Vega, and that the land was surveyed and Williams placed in possession thereof.

That said land was conveyed by Williams in 1840 to Mrs. Sophia St. John, for a valuable consideration, with the assent of said Austin; and that said purchaser from Williams conveyed the same in 1850 to John W. Lapsley, who held the title in trust for himself, Watrous, Price, Plattenberg, Goldsby, Frow, and League, parties to this suit. That the purchasers from and under Williams have held possession of the lands since 1849, and taxes have been paid by said purchasers upon the lands since 1846.

That La Vega never claimed or asserted title to the lands after the execution of said testimonio of 5th of May, 1832, until 1868, in which year he instituted two suits, one in chancery and one at law, in the Circuit Court of the United States at Austin, the object of which suits was to have said testimonio cancelled, and to recover from Lapsley and his co-defendants Watrous, League, and others, damages for the use and occupation of said lands purchased by them under said testimonio of said La Vega; and in each of these suits judgment was rendered adversely to said La Vega, and for said defendants.

That another suit, instituted and determined in said Circuit Court, between the mother and father of the McPhauls, intervenors in this suit, and the said Lapsley, involved the title of the Peter Flemming league, which was located on the La Vega grant several years after the La Vega title was extended, and the land appropriated thereunder by the said Samuel May Williams, and the said La Vega intervened in that suit, and again

brought in issue the validity of said testimonio or power of attorney; and said case was decided in favor of said Lapsley and against La Vega.

The conclusions of the court upon the law of the case are: That the title to the land in controversy was vested, by virtue of the testimonio of May 5, 1832, which was extended by the defendant La Vega before the said Juan Gonzales, as regidor and second alcalde of the city of Leona Vicario, and the subsequent mesne conveyances, in the said John W. Lapsley. That said testimonio is in due form, and is properly authenticated. That the same was admissible in evidence as an ancient instrument; and that the court did not err in admitting same in evidence over objections of appellants.

That the title of the McPhauls under the grant to their ancestor, Peter Flemming, to the land in controversy, was void as to all claiming and holding under the La Vega grant.

That the records in three following causes tried and determined in the Circuit Court of the United States at Austin, to-wit, number 37, chancery suit, and numbers 1093 and 1045, in each of which the said Lapsley and the said La Vega were parties, were properly admitted in evidence by the court, over the objections of appellants; nor did the court err in refusing to permit appellants to read in evidence, upon objection by appellees, the answer of Jose de la Vega, filed in said cause number 37, in reply to cross-bill filed therein by said Lapsley, a defendant in said suit.

And lastly, our conclusion is, that if error was committed upon the trial of this cause by the court in the admission of evidence or the rejection of evidence offered by appellants, such errors were immaterial as to the issue of title between appellants and appellees, inasmuch as no other judgment under the evidence could have been rendered than one denying the claim of La Vega's heirs and those claiming under him by conveyances since the 5th of May, A. D. 1832, to the land in controversy, and decreeing the title to be in John W. Lapsley and his copurchasers under the said testimonio, and through mesne conveyances from said Williams.

This suit was instituted in the District Court of Galveston County, 1874, by Mrs. Esther Y. League and her children, heirs of Thomas M. League, against John W. Lapsley, the heirs of T. B. Goldsby, W. Plattenberg, J. T. Frow, the heirs of J. L. Price, Simon Mussina, N. B. Yard, George Butler, and Tomas de la Vega, and was consolidated with a suit then pending in said court, and instituted therein in 1860 by John W. Lapsley against Thomas M. League and John C. Watrous, to recover on a note of said League and said Watrous, for $4533, executed on 9th of July, A. D. 1850.

The object of the consolidated suit was to recover the amount due upon the note executed by League and Watrous, and also certain moneys al-

leged to be due to John W. Lapsley and his attorney in fact, the said Thomas League, for services rendered and moneys expended by them on account of eleven leagues of land, situated in McLennan County and known as the La Vega grant, and for a partition of said grant between the parties entitled thereto, upon the payment by them of the moneys alleged to be due to said Lapsley and said League.

It was averred, that prior to the execution of said note by League and Watrous, said League had contracted for the purchase of said grant of land, and also for a large number of land certificates; and being unable to complete the purchase, the said Watrous induced the said Lapsley, Goldsby, Plattenberg, Frow, and Price to furnish the purchase money, and to become joint purchasers of said property with himself and the said Thomas M. League.

That Lapsley and his said four associates furnished the entire purchase money, the sum being $9064, and by agreement between all parties in interest the title to said grant of land and to the said land certificates was placed in the said Lapsley; and when the said note executed for $4532 by League and Watrous, the same being for one-half of the purchase money, should be paid by League and Watrous, and certain other moneys in said agreement mentioned and promised, Lapsley was to make a conveyance of one-half of all of said property to them, and the other half to be owned in equal shares by Lapsley and the said Goldsby, Plattenberg, Frow, and Price.

The petition alleged, that Watrous never paid any portion of said note, but that the note was paid by said League and his representatives, and thereby they, the heirs and representatives of League, acquired a lien on said lands for the money so advanced for said Watrous.

It was further alleged, that Watrous conveyed his interest in trust to W. B. Yard, to secure an indebtedness to George Butler, and that said interest had been also purchased at sheriff's sale by one Moreland, through his attorney in fact, one E. J. Gurley, and that one Alexander, as attorney in fact for Moreland, had conveyed said interest of said Watrous to said Simon Mussina, and that Mussina had conveyed same to La Vega, but that the authority of Alexander to make such conveyance was denied by Moreland.

And the petition further averred, that the said Thomas J. Frow also asserted a claim, the character and nature of which was not known, to the interest of Watrous in said property.

The petition neither admitted nor denied the rights or claims of La Vega, Frow, Moreland, or Butler, but prayed that all parties be required to interplead and establish their interests, all of which it was averred to be subordinate to the rights of Lapsley.

In accordance with the prayers of the petitioner, Lapsley, La Vega,

Mussina, Yard, Butler, Moreland, Plattenberg, Frow, and the heirs of Price and of Goldsby were made defendants. Watrous having died, his heirs became parties defendant, and denied the rights of the various claimants to the interest of the deceased in said property, and asserted title thereto, and also set up homestead claim.

Lapsley answered, alleging his expenses, services, and disbursements in protecting title, for which he prayed compensation and reimbursement.

Goldsby's heirs, and heirs of Price and of Plattenberg, and Frow, Butler, Yard, La Vega, and Mussina, all appeared and answered.

Mussina and La Vega answered, that they claimed the interest of Watrous through purchase from Moreland; that they purchased the same only to secure their peace under a title already existing and superior to that of plaintiffs and their codefendants. They averred further, that they had been ejected from their lands by the said Lapsley and his associates, on January 1, 1873. And by amended answer, filed on the 7th of March, A. D. 1876, La Vega averred, that the alleged purchase and agreement of July 9, 1850, by and between the said Lapsley and his said associates, Frow, Price, Plattenberg, Goldsby, and the said League and Watrous, was a fraudulent contrivance and combination, made and done to defraud defendant out of his said tract of land; and that they and others acting in complicity with them did wrongfully and fraudulently make use of and utter a certain false instrument in writing, purporting to be the testimonio of an act of defendant, for the purpose of deraigning title to said eleven leagues of land granted to defendant by the government of Texas and Coahuila; which said instrument, purporting to be a power of attorney to Sam May Williams, executed on the 5th of May, A. D. 1832, at Leona Vicario, now Saltillo, and empowering said Williams to take possession of and to sell said lands, defendant charged to be a forgery.

Subsequently, N. A. McPhaul, as next friend of his minor children, intervened in the suit, and claimed one-fourth of a league of land, part of the La Vega grant of eleven leagues, by inheritance from Peter Flemming, to whom a league of land was granted in 1835, and which was located within the boundaries of the La Vega grant; and it was further claimed for said children, that they were owners of said one-fourth league by purchase through their deceased mother from La Vega. This claim was admitted by La Vega and Mussina, and pleas in reconvention were filed by La Vega and Mussina, who also claimed by purchase from La Vega a portion of the grant to La Vega.

Plaintiffs excepted to these pleas of reconvention, and pleaded in abatement thereto, and pleaded also res judicata. The exceptions were sustained, and also the plea in abatement; and upon motion of plaintiffs, defendants La Vega and Mussina were dismissed from the suit; and on trial of the case verdict and judgment were rendered for the parties claiming

title from Sam Williams, under and by virtue of the testimonio of date May 5, 1832, empowering him, as the attorney in fact of La Vega, to sell the said eleven leagues.    And Moreland, who claimed to be the owner of Watrous' interest in the property, recovered nothing.

From this judgment an appeal was prosecuted to the Supreme Court, and that court reversed the judgment and remanded the case for another trial.    64 Texas, 205.

Upon the second trial in the court below, Mussina and the heirs of La Vega (he having died), and also the heirs of McPhaul, being parties defendant, and claiming title as in their pleadings filed before the first judgment, the jury found against Mussina and La Vega and McPhaul, and judgment was rendered against them, and the land decreed to be divided among those claiming under the purchase made by Lapsley in 1850, and Moreland was adjudged to be the owner of Watrous' share of the property; and judgments for money were also rendered in favor of Lapsley and League, in accordance with their prayer, and the lands were charged with their debts; and there was also a moneyed judgment in favor of defendant Frow, which was declared to be a lien, subordinate, however, to the claims of Lapsley and League, upon Watrous' interest.    And the decree, after adjudging that the parties to whom the lands were adjudged should pay the judgments in favor of League and Lapsley, each in proportion to his share in said lands, further directed, that if these judgments were not paid within six months, execution might issue and be levied upon so much of the eleven leagues as should be necessary to satisfy the judgments.

Motion for new trial having been overruled, Mussina and the heirs of La Vega and the McPhauls excepted thereto in open court, on the 31st of March, A. D. 1888, and gave notice of appeal; and upon motion of the parties ten days were given by the court in which to prepare and file a statement of facts.    And afterwards, to-wit, on the 31st of March, A. D. 1890, the defendant Mussina having died, the executor of his will, joined by the heirs of La Vega and by the McPhauls, sued out a writ of error, and by their counsel filed this transcript in the Supreme Court, and errors; were assigned by plaintiffs in error, and also by the personal representative of the appellee Frow.    But there is no brief filed in this court for any of the plaintiffs in error, nor is there an appearance for any one of them here.

The appellees, the heirs of Thomas M. League, appear by counsel, and suggesting delay, ask for an affirmance of the judgment.

We have not felt called upon, under these circumstances, to consider any of the plaintiffs' assignments save such as refer to and question the correctness of the judgment in sustaining the title of Lapsley, Frow, Price, Plattenberg, Goldsby, and Watrous and League as purchasers from the defendant La Vega, under his alleged power of attorney to Samuel

M. Williams, as evidenced by the instrument purporting to have been executed on the 5th of May, A. D. 1832, in the city of Leona Vicario, in the State of Coahuila, Mexico.

Nor have we considered any of the errors assigned by the appellees, the representatives of Frow. We do not understand that an appellee or defendant in error is privileged to assign errors as against his codefendants or coappellees, as is attempted in this case. An appellee or defendant in error may assign as against the appellant or plaintiff in error, but he can not require a revision of any alleged error committed in adjudicating upon the rights of himself and his codefendants unless he appeals.

We have carefully examined the voluminous record of this case, and finding no error which in our opinion would authorize us to reverse or reform the judgment, it is affirmed.

*Affirmed.*

Delivered February 2, 1893.