GERSETA CORPORATION, Appellant, *v.* THE EQUITABLE TRUST COMPANY OF NEW YORK, Defendant, and THE RAW SILK TRADING COMPANY, Respondent, Impleaded with Others.

Equity — debtor and creditor — insolvency — set-off — subrogation — sale of goods — equity will allow set-off in insolvency where claim of party asserting it has matured — not material that claim against it has not matured — mere insolvency insufficient — business must be in liquidation otherwise rule of legal set-off applies — purchaser may set off price of merchandise against amount owing to it by seller although seller is insolvent, where there has been no judicial recognition of that fact — seller primarily liable to purchaser on balance of account — payment by purchaser to bank, which financed transaction for seller, of sum in satisfaction of judgment recovered by it in action against purchaser for price of goods — purchaser may be subrogated to claim of bank against seller to extent of payment.

1. Equity will allow a set-off in insolvency, providing the claim of the party asserting the right of set-off has matured. It is immaterial that the claim against the party asserting the set-off has not matured. (*Appleton* v. *Nat. Park Bank*, 122 Misc. Rep. 248; 211 App. Div. 708; 241 N. Y. 561, explained.)

2. In applying the rule, the date of insolvency in fact does not determine whether the right of set-off exists. Mere insolvency is no adequate basis for invoking the rule. While the business is a going business, not in the course of liquidation, the rule of legal set-off applies.

3. A purchaser of merchandise, therefore, may set off the price thereof against an amount owing to it but not yet due from the seller, though the latter is insolvent in fact, where there has been no judicial recognition of the fact, no passing of an estate to an assignee or receiver or otherwise for the purpose of liquidation. Only after the estate has passed upon a trust to hold for and distribute among creditors, does the former and natural equity disappear in superior equities vesting in the general body of creditors.

4. Where, on balance of accounts, the seller is primarily liable to the purchaser, and the bank which financed the transaction for the seller and which has held the merchandise by security title and is also protected by securities deposited with it, has, after delivery of the merchandise to the purchaser under trust receipts, sued said purchaser

for its price and recovered judgment, which the purchaser has satisfied by payment in part, the purchaser may be subrogated to the claim of the bank against the seller to the extent of its payment on the judgment. The equitable doctrine of subrogation is broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability. The payment by the purchaser on the judgment reduced by that amount the balance due from the seller to the bank and as a result thereof the seller collected from one of its creditors an amount to be applied on its indebtedness to another. Equity will restore the balance between the parties which the law has temporarily upset.

*Gerseta Corporation* v. *Equitable Trust Co.*, 212 App. Div. 12, reversed.

(Argued December 7, 1925; decided January 12, 1926.)

APPEAL from a judgment, entered March 6, 1925, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directing a dismissal of the complaint.

*David Steckler* and *Emil Weitzner* for appellant. The insolvency of the trading company gave rise to the right on the part of the plaintiff to set off against the trading company's claim of $93,553.98 its claim of $96,146.89 against the trading company. (*Fera* v. *Wickham*, 135 N. Y. 223; *Lindsay* v. *Jackson*, 2 Paige, 581; *Bathgate* v. *Haskin*, 59 N. Y. 533; *Smith* v. *Felton*, 43 N. Y. 419; *Coffin* v. *McLean*, 80 N. Y. 560; *Rothschild* v. *Mack*, 115 N. Y. 1; *Hughitt* v. *Hayes*, 136 N. Y. 163; *Carr* v. *Hamilton*, 129 U. S. 252; *Chance* v. *Isaacs*, 5 Paige, 592; *Richards* v. *LaTourette*, 119 N. Y. 54; *Matter of Hatch*, 155 N. Y. 401.) Upon the payment by the plaintiff to the bank of $36,000, thereby reducing to that extent the debt of the trading company to the bank, the plaintiff became entitled in justice and in equity to be subrogated to the rights of the bank in the collateral which had theretofore been

deposited with the bank by the trading company. (*Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 220 N. Y. 137; *Pease* v. *Eagan*, 131 N. Y. 262; *Dunlop* v. *James*, 174 N. Y. 411; *Conn. Mutual L. Ins. Co.* v. *Cornwell*, 72 Hun, 199; *Koehler* v. *Farmers & Drovers' Nat. Bank*, 5 N. Y. Supp. 745; *Riverside Bank* v. *Totten*, 58 Hun, 603.) Equity will consider that in satisfying the judgment which the bank obtained against the plaintiff the plaintiff paid the debt of the trading company to the bank. (*Foreign Trade Co.* v. *Gerseta*, 237 N. Y. 265; *Drexel* v. *Pease*, 133 N. Y. 129; *Moors* v. *Kidder*, 106 N. Y. 32; *Farmers Bank* v. *Logan*, 74 N. Y. 568.)

*Joseph H. Choate, Jr.*, for respondent. The Appellate Division did not err in holding that equity required the denial of the plaintiff's prayer for subrogation. (*Fera* v. *Wickham*, 135 N. Y. 223; *De Camps* v. *Thomson*, 159 N. Y. 444; *Green* v. *Disbrow*, 79 N. Y. 9.) The Appellate Division did not err in denying subrogation on the ground that in satisfying the bank's judgment the plaintiff was paying its own debt. (*People ex rel. McMillan* v. *Supervisors*, 136 N. Y. 281; *Title Guarantee & Trust Co.* v. *Haven*, 196 N. Y. 487; *Breedin* v. *Smith*, 120 S. E. Rep. 64; *St. Louis & S. F. Ry. Co.* v. *Excello*, 215 S. W. Rep. 755; *Brown* v. *Sheldon State Bank*, 139 Ia. 83.) No right to subrogation can be predicated on the theory that the Equitable Trust Company, instead of suing the plaintiff on the trust receipts and enforcing the judgment obtained in that suit, could have resorted to the trading company's collateral. (Pom. Eq. Juris. [3d ed.] § 1414; *Dolphin* v. *Aylward*, L. R. 4 H. L. 486.)

POUND, J. Plaintiff Gerseta Corporation brought suit against The Equitable Trust Company of New York, The Raw Silk Trading Co. and others seeking among other things a judgment subrogating plaintiff to the rights of the trust company in shares of stock in its possession to the amount of $36,000 and interest. The Special

Term gave judgment in favor of the plaintiff. The trust company has dropped out of the litigation. Trading Company appealed to the Appellate Division which denied the right of subrogation and dismissed the complaint. For convenience, plaintiff will be referred to as Gerseta, defendant Trust Company as the Bank and defendant Raw Silk Trading Company as Trading Co.

The material facts are briefly stated as follows: Both corporations were engaged in the silk business in the city of New York. The Trading Co. was an importer. Each at various times bought silk of the other. Although each delivery was regarded as a separate sale, the actual credit extended was, by the course of dealing, for the balance on the mutual account and not for the full amount owing by one to the other. From about July 15, 1920, Trading Co. was in financial embarrassment. On August 31, 1920, it was in fact insolvent. A committee of creditors took charge of its business, to continue or liquidate as it might seem most desirable. Gerseta then owed Trading Co. about $93,000 but Trading Co. owed Gerseta about $96,000. The balance on mutual accounts was at least $3,000 in favor of Gerseta but the entire indebtedness of Trading Co. to Gerseta had not matured prior to August 31, 1920.

In October, 1919, Gerseta had bought 100 bales of silk of Trading Co. on contract for future delivery. Under the contract settlement was to be made within thirty days by cash or trade acceptance. Deliveries of silk were made in July-August, 1920, amounting to $93,553.98. The Bank had financed the transaction for Trading Co. by issuing letters of credit and held the silk by security title. Trading Co. had also deposited as security various shares of stock including the stock in question, so that the Bank was amply protected. Trading Co. made the deliveries, having received the silk under trust receipts from the Bank. Gerseta had notice of the Bank's claim of ownership at least as to certain deliveries. The Bank

demanded trade acceptances which Gerseta refused to give because Trading Co. was indebted to it.

On October 20, 1920, the indebtedness of Trading Co. to Gerseta had fully matured. The Bank sued Gerseta to recover the amount of $93,553.98 above mentioned and obtained judgment for $74,953.75. On June 15, 1923, Gerseta satisfied the judgment by paying $36,000. The Bank assigned the judgment to a designee of Gerseta. Certain shares of stock were set apart subject to the decision of the court. The payment of $36,000 reduced by that amount the balance due from Trading Co. to the Bank.

The Appellate Division held without discussion that Gerseta had no right of set off, citing *Fera* v. *Wickham* (135 N. Y. 223), however, as authority for the proposition that set off against an insolvent estate will not be allowed unless the claim was due when insolvency first existed; that Trading Co. was insolvent in fact before its indebtedness to Gerseta had matured and Gerseta, therefore, could not claim an offset to the indebtedness of Trading Co. to it but must pay its claim in full and then receive a dividend in common with other creditors. The conclusion followed that Gerseta did nothing more than pay its own valid obligation when it paid the Bank $36,000 under the settlement.

The first question to be considered is whether on October 20, 1920, when the Bank sued Gerseta for the purchase price of the trust receipt silk, Gerseta was entitled to a set off against Trading Co. of the amount due to it. At that time Trading Co. was insolvent and its affairs were in the hands of liquidating trustees but there had been no judicial recognition of the fact, no passing of an estate as to an assignee or receiver or otherwise for the purpose of liquidation. Equity will allow a set off in insolvency, providing the claim of the party asserting the right of set off has matured. It is immaterial that the claim against the party asserting the set off has not

matured. (*Bradley* v. *Angel*, 3 N. Y. 475; *Fera* v. *Wickham, supra; Matter of Hatch*, 155 N. Y. 401.) In *Frank* v. *Mercantile Nat. Bank* (182 N. Y. 264) the difference between the rule in the United States Supreme Court that unmatured claims against the bankrupt are the subject of set off, and the rule in this State was pointed out. CULLEN, Ch. J., in allowing set off under the Bankruptcy Law, said: " If the defendant's rights depended on the equitable rule of set-off as it obtains in this state, it is clear that the notes held by it which had not matured at the time of the transfer of the title from the bankrupt to his assignee could not be set off against the plaintiff's claim." In *Appleton* v. *National Park Bank* (122 Misc. Rep. 248; 211 App. Div. 708; 241 N. Y. 561) where the attachment of an insolvent depositor's account was upheld against the claim of the bank against the insolvent on notes not matured, at the time of the attachment the debtor was insolvent but no receiver then had been appointed. All that was necessary to the decision was the holding that a bank had no legal right to offset against a depositor a note not yet matured. (See PROSKAUER, J.'s first opinion.) But the rule that there could be set off in equity if the claim to be set off was presently due was recognized. It was also held that the Debtor and Creditor Law (Cons. Laws, ch. 12), which provides for setting off mutual debts and credits when an assignment for the benefit of creditors had been made, applied only to a distribution of assets under a general assignment or an analogous proceeding.

The law of this State, when unmodified by statute, is that in insolvency a distinction exists between a debt due to the one who claims the set off and a debt due from him. If the debt is due to the one who claims the set off and it has not matured, he is not at liberty to offset it against the debt which he owes. If, on the other hand, the debt due to him has matured and the question is whether he is to be allowed to claim a dividend,

not only on the debt due to him, but to increase the dividend by offsetting the debt which is due from him, the fact that the debt due from him is not yet due will not defeat the set off but he may prove the credit.

The principle upon which the rule rests is that in case of mutual debts it is only the balance which is the real or just sum owing by or to the insolvent. If the claim against the insolvent has matured at the time of an assignment for the benefit of creditors, the assignee gets no greater right than the assignor had. The assignee takes the balance subsequently accruing after deducting the matured claim. ` But if the debt due from the insolvent subsequently matures, the equities of other creditors will intervene to prevent the depletion of the assets in the hands of the trustee by extinguishing a good debt due to the estate by a bad one due to the creditor from the estate. " In all cases of mutual debts, it is the insolvency of one of the debtors and the rights of the other creditors in the assigned estate that equity takes notice of, and modifies the legal right of set-off accordingly in order to promote equality and justice." (*Matter of Hatch, supra,* p. 406.) The same rule is applied to insolvent decedents' estates. (*Bradley* v. *Angel, supra.*)

In applying the rule the date of insolvency in fact is not the proper date to consider in determining whether the right of set off exists. The date which calls the rule into existence must be fixed in relation to something more definite than the time when the debtor is first unable to meet his obligations as they mature. A debtor might be insolvent for many months or years. He might, as Trading Co. has done, seek to reorganize his business with the forbearance of his creditors and struggle on without being forced into bankruptcy. A long series of mutual credits and debts might cause a fluctuating balance of matured and unmatured demands varying from day to day. Mere insolvency would be no adequate basis for invoking the rule. While the

business is a going business, not in the course of liquidation, the rule of legal set off would be applied. (*Foreign Trade Banking Corp.* v. *Gerseta Corp.*, 237 N. Y. 265.) On the 20th of October, 1920, when the Bank asserted its claim against Gerseta as derived from Trading Co., the latter was a going concern. Its affairs had not passed out of its hands. It still had title to the claims which had not matured when it became insolvent. Its property was not held in trust for the benefit of creditors generally. It defends this action in its own right. The principle of equality of distribution as laid down in *Fera* v. *Wickham* (*supra*) could not be invoked for the benefit of its creditors. An artificial person, it was in the same position that a natural person would have been in before proceedings looking definitely to the winding up of his affairs had been instituted. Only after the estate has passed upon a trust to hold for and distribute among creditors, does the former and natural equity disappear in superior equities vesting in the general body of creditors. (*Fera* v. *Wickham, supra,* p. 230.) The rule in insolvency should not be applied where it would result in a preference or direct advantage to the debtor rather than equality among creditors. The right of set off existed and was not defeated by the fact that Trading Co. was insolvent in fact before the claim of Gerseta against it had matured. .(See " Set-off in Immature Claims in Insolvency," by R. E. Clark, 24 Harvard Law Rev. 178.)

The next question is whether Gerseta may be subrogated to the claim of the Bank against Trading Co. to the extent of its payment thereon.

Subrogation, an equitable doctrine taken from the civil law, is broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for

the protection of some interest of the party making the payment, and in discharge of an existing liability. (Seldon on Subrogation [2d ed.], pp. 2, 4.) Earl, J., in *Cole v. Malcomb* (66 N. Y. 363, 366) said that it is " applicable to cases where a party is compelled to pay the debt of a third person to protect his own rights, or to save his own property." Peckham, J., in *Pease* v. *Egan* (131 N. Y. 262, 272) said — or repeated what had been said before — that it was founded upon principles of benevolence. In *Pittsburgh-Westmoreland Coal Co.* v. *Kerr* (220 N. Y. 137, 144) Chase, J., said, it " includes so wide a range of subjects that it has been called ' the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it.' "

Gerseta paid its debt to the Bank. It did more. By paying the Bank, under compulsion and to protect itself, it reduced Trading Co.'s indebtedness to the Bank by $36,000. It thereby increased Trading Co.'s assets by the same amount. It was under no obligation to pay Trading Co. anything because Trading Co. was primarily liable to it on balance of accounts. It, therefore, discharged *pro tanto* the legal liability of Trading Co. to it and furnished the money which Trading Co. owed to it. The rights of the Bank are no longer to be considered. The question arises only between the two companies.

Casting aside the question of Gerseta's legal liability to the Bank, Trading Co. by its transactions with the Bank has accomplished the inequitable result of collecting $36,000 from its own creditor to be applied on its indebtedness. A benevolent equity is powerful enough to restore the balance between the parties which the law has temporarily upset.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

Hiscock, Ch. J., Cardozo, McLaughlin, Crane, Andrews and Lehman, JJ., concur.

Judgment accordingly.