## GALBRAITH–FOXWORTH LUMBER CO. v. LONG et al. (No. 10154.)

Court of Civil Appeals of Texas. Dallas. March 10, 1928.

Rehearing Denied April 21, 1928.

1. Mechanics' liens ⚖⟿206—Makers of mechanic's lien note, given for building house, held liable thereon to contractor's assignee for full amount less expenditures for completing building after contractor's default.

Makers of negotiable mechanic's lien note, given contractor in payment for building house, *held* liable to contractor's assignee for amount of note less excess they had been compelled to pay for completion of building after contractor's default.

2. Mechanics' liens ⚖⟿255—Assignee of mechanic's lien note held entitled to enforce payment by judgment and foreclosure.

Assignee of negotiable mechanic's lien note *held* to have right to enforce payment by judg-

---

⚖⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ment and foreclosure of mechanic's lien against makers, subject to makers' right of credit for expenditures in completing house after assignor's default.

**3. Mechanics' liens ☞205—Assignee of mechanic's lien note held not required to complete building on contractor's default.**

Assignee of mechanic's lien note, by purchasing it from contractor, did not assume contract, and so did not have duty of completing building on contractor's failure to do so.

**4. Mechanics' liens ☞254(2)—Owners, protected against contractor's default by indemnity bond and right of deduction from mechanic's lien note, should not be compelled to look to bond.**

Where owners of building were protected against contractor's default by indemnity bond and by contract allowing deduction from indebtedness on mechanic's lien note, they had right to pursue either course, and should not be compelled to look to indemnity bond for reimbursement of moneys expended to complete building after contractor's default.

**5. Mechanics' liens ☞310(1)—Contractor's assignee suing on mechanic's lien note held entitled to attorney's fee provided for in note.**

In suit by contractor's assignee on negotiable mechanic's lien note, plaintiff *held* entitled to attorney fee provided for in note, where attitude of makers as disclosed by pleadings showed necessity of placing note in hands of attorney to secure amount justly due; makers never having tendered any amount nor admitted owing plaintiff any part of note.

**6. Mechanics' liens ☞254(2)—In suit by contractor's assignee on mechanic's lien note, liquidated damages for contractor's default should not be deducted.**

In suit by contractor's assignee on negotiable mechanic's lien note, court did not err in refusing to deduct from note amount allowed defendants as liquidated damages on account of contractor's default in completion of improvements, since assignee did not assume undertaking of contractor, nor was it guarantor or insurer of contract.

**7. Mechanics' liens ☞249—Contractor's assignee of mechanic's lien note held entitled to foreclosure, notwithstanding contractor's default.**

There was no error in allowing foreclosure of mechanic's lien in favor of contractor's assignee of negotiable mechanic's lien note, notwithstanding that contractor never completed building but defaulted in reference thereto, where contract provided that failure to complete improvements should not defeat indebtedness and lien.

**8. Mechanics' liens ☞310(1)—In suit by contractor's assignee on mechanic's lien note, refusal to charge against plaintiff attorney fee expended by defendants in defending suit held not error.**

In suit by contractor's assignee on negotiable mechanic's lien note, refusal to charge against plaintiff reasonable attorney fee necessary to be expended by defendants in de-

fending suit *held* not error, where defendant's own attitude in part made suit necessary and plaintiff had not assumed contractual obligation of contractor.

**9. Mechanics' liens ☞315—Contractor's assignee of mechanic's lien note could not recover on indemnity bond against contractor's default amount it was adjudged to pay owner because of contractor's default.**

Contractor's assignee of negotiable mechanic's lien note *held* not entitled to maintain suit on indemnity bond protecting owner against contractor's default to recover, as legal right arising under terms of bond, amount it was adjudged to pay owners because of contractor's default, owners having elected not to pursue right on bond, since there were no contractual relations between bonding company and contractor's assignee.

**10. Subrogation ☞1—Equity will resort to subrogation when necessary to do exact justice.**

Court of equity, when it becomes necessary to do exact justice between parties in given transaction, may place one of parties to whom legal right does not belong in position of another to whom legal right does belong, and such mode, adopted for purpose of doing justice, is termed "subrogation."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Subrogation.]

**11. Subrogation ☞11—Contractor's assignee of mechanic's lien note, having been required to allow deduction for contractor's default, should be subrogated to owners' rights under indemnity bond protecting against contractor's default.**

Contractor's assignee of negotiable mechanic's lien note, having been required to allow deduction because of contractor's default, *held* entitled to be subrogated to rights of owners on indemnity bond protecting owners against contractor's default, where assignee could not sue on bond in its own right.

**12. Subrogation ☞41(5)—In suit on mechanic's lien note by contractor's assignee who was required to allow deduction for contractor's default, plaintiff's pleading held to authorize subrogation to owners' rights under indemnity bond protecting against contractor's default.**

In suit by contractor's assignee on negotiable mechanic's lien note in which plaintiff was required to allow deduction for contractor's default, plaintiff's pleading *held* sufficient to authorize its subrogation to owners' rights on indemnity bond protecting owners against contractor's default, notwithstanding that such pleading might be construed as suit on bond, where facts were alleged under which plaintiff was decreed to pay claim and obligation of bonding company was stated.

**13. Mechanics' liens ☞280(1)—In action on mechanic's lien note by contractor's assignee, defendants' evidence as to conditions unknown to plaintiff held properly excluded.**

In suit by contractor's assignee on negotiable mechanic's lien note, rejection of evidence

---

offered by defendants as to certain undisclosed conditions made with contractor at time of executing note *held* not error, where it was not shown that plaintiff knew of such conditions and there was nothing to charge it with knowledge.

**14. Mechanics' liens ⬤⟹315—Makers of mechanic's lien note held not entitled to reimbursement under contractor's indemnity bond for attorney's fees in suit on note.**

In action by contractor's assignee on negotiable mechanic's lien note, brought against makers and bonding company which executed indemnity bond protecting makers against contractor's default, makers *held* not entitled to judgment against bonding company for amount of attorney's fee expended by them in defending suit and allowed against them for plaintiff, where' they had not performed conditions of contract nor tendered performance.

On Motion for Rehearing.

**15. Subrogation ⬤⟹26—Contractor's assignee of mechanic's lien note, who financed contractor, held not barred as volunteer from claiming subrogation to owner's rights under indemnity bond.**

Contractor's assignee suing on negotiable mechanic's lien note *held* not barred from claiming subrogation to owners' rights under indemnity bond on ground that it was "volunteer," where its financing of contractor was essential and contemplated part of undertaking.

Appeal from District Court Dallas County; Claude M. McCallum, Judge.

Action by the Galbraith-Foxworth Lumber Company against Mrs. Betty Long and others. From the judgment, plaintiff appeals, named defendant and another prosecute cross-assignments of error, and defendant Fidelity & Deposit Company of Maryland prosecutes an independent appeal by writ of error. Affirmed in part, reversed in part, and rendered.

Cockrell, McBride, O'Donnell & Hamilton, of Dallas, for appellant.

Smithdeal, Shook, Spence & Bowyer and Albert B. Hall, all of Dallas, for appellees.

JONES, C. J. The judgment of a district court of Dallas county, from which the Galbraith-Foxworth Lumber Company, a corporation and plaintiff in the suit below, prosecutes an appeal, and from which Alfred Long and Mrs. Betty Long, husband and wife, parties defendant in the suit, prosecute cross-assignments of error, and from which the Fidelity & Deposit Co. of Maryland, also a party defendant (Tex. Civ. App.) 5 S.W.(2d) 169, has prosecuted an independent appeal by writ of error, is based on the following facts:

On June 23, 1924, Long and wife, styled herein appellees, entered into a written contract with C. B. Barnes for the construction of a 2-story, 14-room brick veneer residence, under plans and specifications therein named, for the sum of $13,975. Barnes was to furnish all the labor and material, and to complete the construction within 100 days, and obligated himself to pay as agreed damages the sum of $10 per day for each day in excess of the 100 days required by him to deliver to appellees the completed structure. As representing the consideration, Long and wife duly executed to Barnes a negotiable mechanic's lien note in the principal sum of $13,975, and containing the usual provision as to attorney fees, said note maturing 100 days from date and bearing interest at 8 per cent. per annum from maturity. The mechanic's lien to secure said note was duly executed by Long and wife in favor of Barnes. These instruments all bore the date of June 23, 1924. At the time of the execution of this contract, lien, and note, it was contemplated that Barnes would at once execute an indemnity bond in the principal sum of $7,000, guaranteeing his performance of the contract, and on June 25, 1924, the Fidelity & Deposit Company of Maryland, for convenience herein styled bonding company, duly executed the bond contemplated, and same was delivered to appellees. The bond is as follows:

"Know all men by these presents, that C. B. Barnes, Dallas, Texas (hereinafter called principal), as principal, and the Fidelity & Deposit Company of Maryland, a corporation of the state of Maryland, with its home office in the city of Baltimore, Maryland, U. S. A. (hereinafter called surety), as surety, are held and firmly bound unto Mrs. Betty Long and husband, Alfred Long (hereinafter called owner), in the full and just sum of seven thousand dollars ($7,000) to the payment of which sum, well and truly to be made, the principal and surety bind themselves, their and each of their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

"Signed, sealed and dated this 25th day of June, 1924.

"Whereas, the principal has entered into a certain written contract, dated the 23d day of June, A. D. 1924, with the owner for erection and completion of two-story brick veneer residence and three garages on Blaylock Drive, *Dallas, Texas, in accordance with plans and specifications prepared by Arthur A. Brown, Architect, Dallas, Texas:*

"Now, therefore, the condition of this obligation is such that if the principal shall indemnify the owner against any and all loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract, then this obligation shall be void; otherwise to remain in full force and effect.

"This bond is executed and accepted upon the following express conditions' precedent:

"1. That the owner shall faithfully and punctually perform all the terms and conditions of said contract to be performed by the owner.

"2. That if the principal shall abandon said contract or be lawfully compelled by reason of a default to cease operations thereunder, the surety shall have the right at its option to

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

complete said contract or to sublet the completion thereof.

"3. That the owner shall notify the surety by registered letter, addressed and mailed to it at its home office, of any breach of said contract within a reasonable time after such breach shall have come to the knowledge of the owner, or the architect, or engineer.

"4. That the surety shall not be liable for any provisions of the contract or specifications respecting guaranties of efficiency or wearing qualities, or for maintenance or repairs, nor is the surety obligated to furnish any other bond covering such provisions of the contract or specifications."

The mechanic's lien contract contained the following clause:

"That a failure to complete said improvements, or a failure to complete the same according to contract, shall not defeat said indebtedness and lien, but in such case the indebtedness and lien upon said premises and improvements shall exist in favor of the party of the second part (Barnes), his heirs and assigns for said contract price, less such an amount as would be reasonably necessary to complete said improvements according to plans and specifications."

The title to this lot was in the name of Mrs. Betty Long, and the conveyance recited that it was her separate property. It was known by appellees at the time they executed the note and the mechanic's lien that Barnes would use the note and lien for the purpose of securing the money necessary to perform the contract, and on July 3, 1924, he duly transferred and assigned the note and lien to the Galbraith-Foxworth Lumber Company, styled herein appellant, for the consideration of payment to him of the principal sum named in the note. The undisputed evidence shows that this consideration was to be paid from time to time, as the work progressed, in the furnishing of material to go into the construction and money to pay the labor.

At a time when the construction was far from completion, Barnes had received from appellant, in material and money that had gone into the building, the full consideration of $13,975, and, when notified of this fact, he refused to carry out his contract. The bonding company was at once notified in writing of the default of Barnes and requested to complete the contract, but this it refused to do, and thereby placed such duty on appellees. In refusing to exercise its option to complete the building, the bonding company reserved to itself all the defenses it might have to any claim that might arise against it by reason of the abandonment of Barnes.

The construction was completed by another contractor at an additional cost to appellees of $5,369.13, which amount was reasonable and necessary for the completion of the building. The sum of $1,180 was paid to appellant by appellees before Barnes abandoned the construction. Appellees were living on rented premises at the time this contract was entered into, and were having the house constructed for their homestead, although one story of same was to be rented as an apartment.

By proper pleadings, appellant claimed the right to recover against appellees the amount of the note, together with 10 per cent. additional as attorney fee and a foreclosure of the mechanic's lien. It also impleaded the bonding company, and claimed that, in the event appellees should be adjudged to have the right of a credit on the note in the sum of $5,369.13, they were compelled to pay to secure the completion of the building, then, in such event, it have judgment against the bonding company in the amount of the credit allowed appellees. Its pleading in this respect was full and complete, and raised all the issues here discussed,

Appellees' answer set up the right of credit to the additional amount they had paid for the completion of the building, also the right of credit of the $1,180 they had paid on the principal of the note, denied the right of foreclosure of the mechanic's lien, on the theory that the property was their homestead, and, as a condition precedent to the contract mechanic's lien becoming a valid and existing lien, Barnes must have completed the building; and, as he abandoned the contract with the building uncompleted, no valid mechanic's lien was brought into existence in favor of Barnes or his assigns. They also set up a claim to recover, from the bonding company, on its indemnity bond, the additional amount they had been compelled to expend for the completion of the building, and asked for judgment against the bonding company in said amount. They denied the right to recover attorney fees in any amount, and, because of the fact that the foreclosure of mechanic's lien was sought against their homestead, denied that such foreclosure could include an attorney fee, even if the asserted lien were held valid and said attorney fee were allowed. They sought to recover against appellant their agreed damages for the 100 days in excess of the contract time used to complete the building, and to recover a reasonable attorney fee and court cost for defending the suit. They also sought to recover against the bonding company, both for these items of damages and any attorney fee they might be adjudged to pay to appellant. Their pleadings were full and complete on these questions, and raised all the issues here discussed.

The bonding company contested under appropriate pleadings all recovery sought by the pleadings of appellant and appellees against it.

The case was tried to the court without a jury, and judgment entered as follows: Appellant was awarded judgment against

appellees in the sum of $7,425.87, with interest at the rate of 8 per cent. per annum from October 1, 1924, and a foreclosure of the mechanic's lien on the property described in appellant's petition. In arriving at the amount of this award, the court gave appellees credit for the sum of $1,180, that had been theretofore paid by them to appellant, and also the sum of $5,369.13, the amount that appellees had been compelled to pay to secure a completion of the building. The court denied to appellant the right to recover from the bonding company this said sum of $5,369.13, and found in favor of the bonding company as to any amount claimed against it except the sum of $800, claimed by appellees as liquidated damages, which it awarded to appellees against the bonding company under the terms of its indemnity bond. The court also awarded appellant 10 per cent. of the recovery allowed as attorney fees against appellee Alfred Long only, and did not allow a foreclosure of the mechanic's lien for this amount. The disposition made by the judgment of the other parties is not deemed necessary here to set out.

On that portion of the judgment which allowed appellees' said credit on the note and denied to it a recovery for a like amount against the bonding company, appellant has assigned error and duly perfected its appeal. Appellees have duly presented cross-assignments of error, challenging the correctness of the judgment as to the attorney fee allowed appellant against appellee Alfred Long, and because of the refusal of the court to allow recovery against appellant for the liquidated damages. Appellees have also presented a cross-assignment of error against their coappellee, the bonding company, because of the refusal of the court to allow a recovery against said company for its costs, including a reasonable attorney fee for their defense of this suit. The bonding company has perfected a separate appeal on that portion of the judgment which awarded appellees liquidated damages. The issues of this appeal are presented by these assignments and cross-assignments.

[1] Manifestly the first matter to determine is the respective contract rights and duties of the parties. Appellees had the right to a completed and finished building, ready for occupancy, within 100 days from the date of contract, at a cost of $13,975, the principal of the note they had executed to Barnes, the contractor. As to the $5,369.13 in excess of the contract price they were compelled to pay to secure the construction of their building, they had either the right to require appellant to credit the note for the amount of this excess, under the clause above quoted, for they reserved this in the mechanic's lien contract, or they could pay the note in full and recover this excess sum from the bonding company under the terms of the indemnity bond executed for their benefit. The duty rested upon them to pay to appellant the amount of the note, less the excess they had been compelled to pay for the completion of the building.

[2] Appellant, having purchased the note for its full face value, and having assigned to it the mechanic's lien contract as security for its payment, before maturity of the note and without notice except as given by recitals in these instruments, had the right to enforce payment of the note by judgment and foreclosure of the mechanic's lien against appellees, subject, of course, to the right of credit reserved to appellees. The duty rested upon appellant to pay to Barnes the amount of $13,975, in labor and material necessary for the construction of the building. If this was not sufficient to complete the building, and appellees were compelled to pay an additional amount for this purpose, to allow them credit of this excess cost on their note, should they elect to demand such credit, rather than to rely on their indemnity bond.

[3] The duty rested on the bonding company, under the terms of its indemnity bond, either to complete the building at its own expense when Barnes abandoned the contract, or to decline to exercise such option and thereby permit this to be done by appellees, and then to reimburse them for the excess of the contract price reasonably required to do such work. There was no contract duty resting upon the bonding company in favor of appellant. Appellant, by its purchase of the note and the assignment to it of the mechanic's lien, did not assume the contract of Barnes, nor did there rest upon it the duty of completing the building on Barnes' failure to do so. That these respective rights and duties, as above set forth, existed by force of the contracts in evidence in this case, it seems to us, is clear and unmistakable.

[4] From the above discussion, it necessarily follows that the court did not err in allowing appellee a credit on the note for the said sum of $5,369.13, and giving appellant judgment and foreclosure of the mechanic's lien against appellees for the balance of the note. It is true that appellees had the undoubted right to look to the bonding company for reimbursement of this sum of money, additional to the contract price, but they had just as undoubted right to look to appellant for the payment of such sum by way of credit on their note indebtedness. Having secured to themselves by contract a right of option to exercise one of two rights, they had the legal privilege to insist that they be allowed to pursue the right which offers to them the more certain and more expeditious manner of reimbursing them for this loss, and it became the duty of the trial court to give recognition to such privilege. Appellant's contention that the court should have compelled appellees to look to the bonding

company alone for such reimbursement is overruled.

[5] We do not believe the court erred in awarding the attorney fee provided in the note to appellant. The attitude of appellees, as disclosed by their pleadings, shows that it was necessary to place the note in the hands of an attorney in order to secure from appellees the amount justly due appellant. They never tendered to appellant any amount nor admitted owing appellant any part of the note, and never recognized that it had any legal and just rights against them. The cases relied upon by appellees we do not think are authority in this case, for here the conclusion is inescapable that, in order to secure the rights accruing to it, as the purchaser in good faith of the promissory note executed by appellees, is was necessary to place said note in the hands of an attorney and direct that suit be filed thereon.

[6, 7] We do not think the court erred in refusing to deduct the $800 from the note allowed appellees as liquidated damages on account of the default and delay of Barnes in the completion of the improvements. Appellant did not assume the undertaking of Barnes, nor was it a guarantor or an insurer of Barnes' contract. When it purchased the note and had assigned to it the mechanic's lien, the bonding company had guaranteed by its indemnity bond the completion of the contract entered into by Barnes, and damages resulting from his failures could not be chargeable to appellant. Nor was there error of the trial court in foreclosing the mechanic's lien in favor of appellant, notwithstanding the fact Barnes never completed the building but defaulted in reference thereto. The fact that distinguishes this case from the cases relied upon by appellees is that in this case appellees contracted in writing:

"That a failure to complete said improvements, or a failure to complete the same according to contract, shall not defeat said indebtedness and lien, but in such case the indebtedness and lien upon said premises and improvements shall exist in favor of the party of the second part (Barnes), his heirs and assigns for said contract price, less such an amount as would be reasonably necessary to complete said improvements according to plans and specifications."

[8] The above clause is not only a complete answer to this contention of appellees, but also a complete answer to their further contention that, under the circumstances, appellant's suit was not one upon the note and mechanic's lien, but was one upon quantum meruit. Nor did the court err in refusing to charge against appellant the reasonable attorney fee necessary to be expended by appellees in defending this suit. Appellees' own attitude in the premises in part made the suit necessary, and the effect of this attitude is not lessened by the fact that appellant, when compelled to file suit, made demands against appellees of which it was not legally entitled. The correctness of the court's ruling in this respect is also apparent from the fact that appellant had not assumed the contractual obligation of Barnes, and hence no relation existed between appellant and appellees upon which a recovery of such attorney fees could be predicated. All assignments of error in respect to these issues are overruled.

[9, 10] Appellant sustained no contractual relations with the bonding company, and could not maintain a suit on the indemnity bond to recover as a legal right, arising under the terms of the bond, the amount it has been adjudged to pay to appellees, under the quoted clause of the mechanic's lien contract, because of the failure of Barnes to perform his contract with appellees. It does not necessarily follow, however, that no right of recoupment from the bonding company for this loss rests in appellant. A court of equity, when it becomes necessary to do exact justice between parties in a given transaction, may place one of these parties, to whom a legal right does not belong, in the position of a party to whom the legal right does belong. This mode, adopted for the purpose of doing justice, is termed "subrogation." Murphy v. Smith (Tex. Civ. App.) 50 S. W. 1040; First National Bank v. Ackerman, 70 Tex. 315, 8 S. W. 45; Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528; Williston on Contracts, § 1265; 25 R. C. L. p. 1322, § 10 et seq. This doctrine is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment and in discharge of an existing liability. Gerseta Corporation v. Equitable Trust Co. et al., 241 N. Y. 418, 150 N. E. 501, 43 A. L. R. 1320; Sheldon on Subrogation (2d Ed.) pp. 2 and 4; Harris' Law of Subrogation, p. 2. The right of subrogation is not dependent upon contract, agreement, or stipulation, or upon privity or strict suretyship; but it is a mode which equity adopts to compel the ultimate payment of a debt, by one who, in justice, equity, good conscience, ought to pay it. Authorities above cited.

[11] Under the facts of the instant case, appellees were obligated to pay to appellant the principal sum of $13,975, together with interest and attorney fee, by virtue of the negotiable promissory note they had executed in favor of Barnes. By the terms of the contract under which they executed this promissory note, we have seen that they had the right to pay a portion of this note, amounting to $5,369.13, by set-off against the principal sum, and, to the extent of this amount, appellees were creditors of appellant. Under the terms of the indemnity bond executed

by the bonding company, appellees had the unquestionable right to waive their right of set-off against appellant and recover this said sum of money from the bonding company, and were creditors of the bonding company in this amount. Which of these debtors of appellees is in a position to claim the favor of a court of equity after appellees have been allowed to assert their privilege in reference to the debtor from whom they would exact payment? In other words, upon whom should the burden of paying this sum of $5,-369.13 ultimately fall? The very doctrine we are discussing furnishes the guiding rule for answer to this query. The rule is that such payment must ultimately fall on him who in justice, equity, and good conscience ought to pay it. Which of the two debtors to appellees should be favored under this determining test?

The cost to appellees in excess of the contract price for the construction of their building was not occasioned by any default or failure of appellant. On the contrary, appellant performed its contract with Barnes, the contractor, and paid to him the full contract price for the construction of the building. When Barnes abandoned construction with the building unfinished, after he had consumed the entire contract price for a completed structure, the bonding company's obligation to appellees to make good Barnes' default at once matured. This was true, notwithstanding the option such company had, either to decline itself the completion of the building, or to decline to sublet this work to another, and by so doing, compel its obligees (appellees) to have the work completed at this extra cost to them. While appellees could and did look to appellant for payment of this excess cost of construction, by having such an amount credited on the note, the bonding company's contract of indemnity was not made subordinate to such right, and its primary obligation was not affected, either by the existence of this right, or by its enforcement against appellant. It is plain that the court should have decreed that the ultimate payment of the excess cost of construction in the sum of $5,369.13, under the equitable doctrine of subrogation, should ultimately fall upon the bonding company, and that the judgment of the lower court in this respect should be reversed and here rendered in favor of appellant and against the bonding company in said sum.

[12] It is urged by the bonding company that appellant's pleadings can only be construed as a suit against the bonding company on the bond. To this we cannot agree. It is true appellant does pursue such remedy in its pleadings, but it is also true that it alleges the facts under which appellant was decreed to pay this claim to appellees and the obligation the bonding company had assumed to appellees because of the indemnity bond it had executed, and under such conditions prays for judgment against said company. This is sufficient for the equitable relief prayed for.

[13] We do not think there was error in the trial court's refusing to hear the evidence offered by appellees as to certain undisclosed conditions made with Barnes at the time of the execution of the note in question. It is not shown that appellant knew of these conditions, nor is there anything to charge it with knowledge of the conditions claimed. The assignments of error in reference to this issue are overruled.

[14] Appellees in this appeal present two cross-assignments of error against their coappellee, the bonding company. These cross-assignments appear in the brief of appellees, and are filed as assignments of error in the trial court. The bonding company objects to consideration of these cross-assignments of error, for the reason that appellees, not having appealed from the matters of which they complain, cannot by this method have this court review cross-assignments against a coappellee. This objection appears to be well taken. National Bank of Cleburne v. Carper, 28 Tex. Civ. App. 334, 67 S. W. 188; Yarbrough v. Whitman, 50 Tex. Civ. App. 391, 110 S. W. 471; La Vega's Heirs v. League, 2 Tex. Civ. App. 252, 21 S. W. 565; Pumphrey v. Hunter et al. (Tex. Civ. App.) 270 S. W. 237, and authorities cited in this latter case. The bonding company, however, did perfect a separate appeal from the judgment entered in the trial of this case by suing out a writ of error, and, after filing the record in this court, moved in this court to consolidate the appeal it had perfected with the instant case. This court, however, did not grant this motion, but caused both of said cases to be submitted at the same time. We, however, do not find it necessary to pass on the question whether, in view of these circumstances, appellees are entitled to have their cross-assignments of error against the bonding company considered on this appeal, for the reason that we have been unable to find any merit in the cross-assignments of error. The first one complains of the refusal of the trial court to award them judgment for reasonable attorney fee as defendants in the suit filed by appellant and for the court costs chargeable against them, and the second assignment of error complains of the refusal of the court to give them judgment over against the bonding company for the amount of the attorney fee allowed appellant against appellee, Alfred Long. One condition of the contract of indemnity entered into with the bonding company is "that the owners (appellees) shall faithfully and punctually perform all the terms and conditions of said contract to be performed by the owners." If appellees had performed all these conditions, or tendered performance of them, and suit had been instituted against them, then they might have been in a posi-

tion to ask for reimbursement in the particulars enumerated in the cross-assignments, but, as we have seen, they did not either perform or tender performance in regard to certain material matters heretofore discussed, and we therefore do not think that they were entitled to the recovery sought.

We are of the opinion that the judgment of the trial court should be affirmed, except as to that portion which denied appellant a recovery against the bonding company for the sum of $5,369.13, together with interest at the rate of 6 per cent. per annum from the date of the judgment in the lower court, and that such portion of the judgment should be reversed and here rendered in favor of appellant against the Fidelity & Deposit Company of Maryland, and it is so ordered.

Affirmed in part; reversed and rendered in part.

### On Motion for Rehearing.

[15] In its motion for rehearing, the Fidelity & Deposit Company of Maryland has asserted that appellant, having purchased of Barnes, the contractor, the note and mechanic's lien contract executed by appellees to Barnes, is a mere volunteer, as that term is used in subrogation cases, and hence is not in a position to claim the right of subrogation. If the Fidelity Company be correct in its assumption that appellant is a mere volunteer, then the legal conclusion it draws must be allowed. However, is appellant a mere volunteer? The undisputed evidence is that, at the time the contract was entered into between appellees and Barnes, it was known that Barnes would have to be financed in the undertaking from some source, and the conclusion necessarily follows that the note and mechanic's lien must form the basis for securing the necessary credit therefor. Before any sum of money was expended on the contract, the note and mechanic's lien were transferred to appellant for the consideration of the furnishing the material and money necessary for Barnes to construct the building. Without this aid, the work of construction could not have been started. From this the conclusion necessarily follows that appellant was not a mere volunteer, but that its financing Barnes was an essential and a contemplated part of the undertaking. Miller v. Guaranty Trust & Banking Co. et al. (Tex. Civ App.) 207 S. W. 642; Fievel v. Zuber, 67 Tex. 275, 3 S. W. 273.

When the Fidelity Company executed the indemnity bond, its local manager must have known that Barnes had to be financed in his undertaking, because of the fact that the owners of the building were to pay no part of the consideration until there was a completed structure, and that the bond it was executing would become a necessary element in procuring the money to complete the contract it was guaranteeing. It is in-

conceivable that, without a bond guaranteeing performance by Barnes, with the mechanic's lien contract allowing the owners of the building to charge the note they had executed with any excess price in the cost of construction, any business institution would finance the contractor on the security alone of the note and mechanic's lien. The evidence of appellant's manager warrants the conclusion that it would not have financed Barnes but for the indemnity bond. This motion for rehearing is overruled.

Appellees, in their motion for rehearing, point out an error of statement in regard to the filing of certain cross-assignments of error in the lower court. In the view taken of the case, this error was immaterial, but the erroneous statement has been corrected in the original opinion. This motion for rehearing is also overruled.